THE STATE OF FLORIDA, EX REL. THE ATTORNEY GENERAL,
VS. WM. H. H. GEORGE.

1. When the government of a city or town is controlled by the general municipal incorporation act neither six months residence nor registration is requisite to eligibility to office in such city or town.

2. It is apparent from the proceedings of the Convention which framed our present Constitution, that it was not intended to make the qualifications of officers, other than the Governor and members and Senators of the Legislature, dependent on the qualifications for voters.

3. The requisite qualifications for electors do not necessarily apply to officers, in the absence of any constitutional or statutory provision to that effect.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion of the court.

*D. S. Walker* for Relator.

The gravamen of the information is that the respondent had not resided six months in the town of DeLand, immediately preceding his election to the offices of Marshal and Collector of said town, and was not, at the time of said election, a registered voter of said town, and for these reasons is ineligible and should be ousted from the offices of Marshal and Collector of Taxes of said town.

The facts as alleged are admitted by the demurrer. Relator contends : 1st, That the office of Marshal of DeLand is a State office; and 2d, That no person is qualified or eligible to hold any State office who is not an elector under the laws providing the qualifications of electors at elections to fill such offices.

In support of the first proposition the authorities are unanimous. Dillon's Municipal Corporations, sections 58, 60, 210, 975 ; 30 Grat., 24 ; 24 Mich., 44, 45.

In Bush vs. Hardwick, 30 Grat., Ib., the distinction between State officers, that is officers whose duties concern the State at large or the general public, although exercised within defined territorial limits, and municipal officers, whose functions relate exclusively to the particular municipality, is discussed at length. Ib., 33 and 35.

The Constitution of Virginia empowered the Mayor to remove *all city* officers. A statute was passed which provided that the Mayor should have power to suspend the Chief of Police. The question was, had the Mayor power under the Constitution to remove the Chief of Police. The Supreme Court held that the Chief of Police, being a State officer and not a city officer, the statute was not in conflict with the Constitution, and the Mayor's powers were restricted to suspension, as provided by the statute. That is that " city officers " used in the Constitution did not include police officers, they being State and not city officers.

" The State as a political society is interested in suppression of crime, and in preservation of peace and good order. The instruments by which these objects are effected, however appointed, by whatever name called, are agencies of the State and not the municipality for which they are appointed or elected." And the learned judge in concluding said that against this conclusion there is not a decision. 30 Grat., Ib., 38. On this principle cities cannot be made responsible for the acts of such officers. Dillon's Munic. Corpr., 975.

2. The second proposition is not more difficult.

The Constitution of Florida prescribes the qualifications of electors at all elections under the Constitution. Art. 6, secs. 1 and 2.

Residence in the State one year, and in the county six months, and *registration according to law*, are required of all electors, and the additional qualifications of residence for six months in the limits of cities and towns and registration (if required by city ordinance), in such cities and towns are prescribed by statute for electors in cities and towns. McClellan's Digest, 247, secs. 13 and 14.

No qualifications for holding office are prescribed by the Constitution, except for the offices of Governor, Judges and members of the Legislature. Art. 4, section 3 ; Art. 5, sec. 3 ; Art. 5, sec. 4. Still, it is manifest that the Constitution does not mean that any and all the offices of the State may be filled by aliens, except those of Governor, Judges and members of the Legislature. On the contrary, the framers of the Constitution deemed it only necessary to name certain extraordinary qualifications for those high and important persons, to whom is entrusted the entire power of the government, it being the established law, a part of the education of every American, the foundation upon which all our institutions rest, that no powers of government can

be exercised in this country except by its own citizens.
This doctrine is clearly set forth in The State, *ex rel.*, Off.
vs. Smith, 14 Wis., 497. The learned Judge cites no au-
thorities, and deals with the matter as if no adverse opin-
ion could possibly be seriously entertained.

The Constitution of Wisconsin, where the decision was
made, is the same as ours.

It may be contended that although State officers, there
may be a distinction between those whose duties are con-
fined to cities and towns, and others of more extended ju-
risdiction and powers, that a person possessing *some* of the
qualifications to hold this State office, which qualifies him
for holding other State offices, may be permitted to dis-
pense with those additional qualifications *required by law*
to fill this particular office. But such conclusions are not
sustained by reason. The Constitution prescribes the
qualifications of electors at all elections under the Consti-
tution. Art. 6, secs. 1 and 2. The Constitution also provides
that the Legislature shall have power to provide for the
establishment of municipal governments, (Art. 3, sec. 24,)
thereby empowering the Legislature to provide for elec-
tions by municipalities and prescribe the qualifications of
electors in said municipalities, consistent with the Consti-
tution. The Legislature, by statute, provides for city
elections, and upon the principle which prevails in all free
countries, viz: That some interest in or relation with the
city is essential to qualify a person to have a voice in the
government of the city, a residence therein and registra-
tion, as prescribed by the ordinances thereof, is prescribed
in addition to the qualifications required to vote for other
State officers. McClellan's Digest, 247, sec. 13; McClel-
lan's Digest, 248, sec. 14; McClellan's Digest, 246, sec. 4.

There is nothing contrary to the Constitution or against
public policy in such legislation, on the contrary it is

strictly in accord with both. With what reason, then, is it contended that although other State officers must have all the qualifications of an elector in order to hold office, these particular State offices may be held by persons possessing only *some* of the qualifications of an elector to vote at elections for such offices.

The same power that requires the qualifications of the one requires the qualifications of the other. The Constitution specifies the one and directs the Legislature to specify the other. One is as effective as the other; no distinction is possible.

The oath prescribed is the same for all, viz.: That they " are entitled to hold office under the Constitution." McClellan's Digest, 246, section 6; Constitution, article 16, sec. 2. The Constitution says nothing as to the rights of citizens to hold office; as citizens they have the rights of citizenship, one of which is to hold any office for which they are not *disqualified* from holding under the Constitution and the laws passed in pursuance thereof. By constitutional provision all citizens who are 21 years old and have resided in the State one year and in the county six months may register and vote, and without other qualification may hold any office that they can vote to fill, except those of Governor, Judges and members of the Legislature. But the Constitution directs the Legislature to establish city and town governments, which is done. In these governments officers are elected for which citizens of the United States, who are electors in the State of Florida, cannot vote unless they also possess the qualifications prescribed by statute for electors in these cities and towns. This statutory qualification is as effective to prevent any disqualified person from voting in the city elections as the constitutional qualification is to prevent disqualified per-

sons from voting at other elections. None who have not the constitutional qualifications can hold any office because they cannot vote ; none who have not the statutory qualifications can hold any office created by the statute because they cannot vote at elections for such officers. The first are constitutional officers and the Constitution prescribes the qualifications of the persons who shall elect them. The second are created by statute, and the statute being constitutional it has the same force and effect as the constitution, and must bear the same construction. By prohibiting any persons from voting at city elections who have not resided in the city limits six months and registered according to the ordinances of said city the constitutional rights of no citizen are interfered with, nor is the citizen deprived of any right because he cannot hold office unless he is qualified to vote.

Some decisions have been made to the effect that purely municipal officers may be elected who have not the qualifications of electors in the municipality when elected ; but Judge Dillon is decidedly opposed to the correctness of these decisions, and the decisions themselves were in cases where the elections were for Clerk and Treasurer and Surveyor, who are in no sense State officers. Dillon on Municipal Corporations, sec. 195 ; 12 Ga., 23; 6 La., 515.

In 12 Penn. St., 365, the court refused the writ upon the relation of private persons, but would not have refused it upon the relation of the Attorney General.

This case is referred to and discussed in Leading Cases on Elections, 143, Carson vs. McPhetridge, 15 Ind., 327.

*Arthur G. Hamlin* for Respondent.

THE CHIEF-JUSTICE delivered the opinion of the court:

The Attorney-General of the State files an information against George for a writ of *quo warranto*, alleging that George illegally usurps the office of Marshal and Collector of Taxes of the town of DeLand, in the county of Volusia. The basis of the complaint is, that George, though elected to these offices, is ineligible because he had not resided in the corporate limits of DeLand six months prior to the election, and was not a registered voter in said town at the time of his election. An alternative writ was issued from this court, to which George responds by a demurrer, founded partly on alleged defects of the information, but mainly on the insufficiency of the facts to sustain the proceeding.

Passing by unimportant matters, we address ourselves to the vital question in the case, to wit: Is a man eligible to office, under the Constitution and laws of this State, in a town of which he has not been a resident for six months, and in which he is not a registered voter? The argument for the relator against eligibility dwells considerably on the idea that the office of Marshal of a town is a State office, and subject to the same rules applicable to other similar State offices. The authorities cited seem to sustain the view that municipal officers charged with the duty of preserving the peace and good order of society, and of bringing offenders to punishment, are at the same time State officers. Dillon's Mun. Cor., sections 58, 60, 210; Burch vs. Hardwick, 30 Grat., 24; People vs. Hurlbut, 24 Mich., 44. But to our apprehension it makes no difference in regard to the question here whether the office was a State office or a strictly municipal office. There is nothing in the Constitution or statutes to distinguish between them in respect to qualifi-

cations necessary to eligibility. The simple question, therefore, is, whether, not having had a residence in the town six months, and not being registered therein, the respondent can hold the office to which he was elected ?

The Constitution prescribes no qualifications for office, except for Governor, Senators and members of the House of Representatives, and Judges of the Supreme and Circuit Courts ; and as to these, only the Governor, Senators and members are required to be qualified electors. It is silent as to the qualifications of all other officers. We do not infer from this that the framers of the Constitution were unmindful of the importance of having only such persons put into office as would be endowed with suitable qualifications. Our inference rather is that they deemed it best to leave that without rigid restriction, trusting that those who were to have the selection of officers would take care that none but fit persons should be selected or appointed ; fit, not only in respect to capacity and character, but also in having citizenship to identify them in interest with the communities in which their official duties were to be performed. Considering the conditions of population in the State, this would not seem an unreasonable course. The fact that large portions of the State were sparsely settled, but were filling up more or less rapidly with new inhabitants, and that new towns and cities were emerging from the woods, and in many instances growing at a rate that left the people of one year a minority of those of the next, naturally suggest that it might be impolitic to narrow the field from which officials were to be taken so that none should be eligible who were not eligible to vote—the qualification for voting, among other things, being twelve months' residence in the State and six months in the county, and registration.

We are satisfied from the history of the convention

which framed our present Constitution, in 1885, that the absence of qualifications for officers other than as above mentioned, either for the reason given, or some other, was intentional.. The convention was called " for the purpose of making an entire revision of the Constitution " of 1868. Acts of 1885, chapter 3577, section 1. The proceedings of the convention show that the work of that body was made to conform to the idea of " revision." In appointing committees they were designated by names corresponding to the seventeen Articles of the Constitution to be revised, accompanied by this resolution: " That the functions of these committees shall be to revise the Constitution in such matters as are indicated by their respective titles, and to consider and report on all matters referred to them." Con. Journal, p. 31. One of these was a " Committee on Miscellaneous Provisions," and by reference to section 22, under that title in the Constitution of 1868, this provision will be found: " No person shall be eligible to any office unless he be a registered voter." But this does not appear under that title, or any other, in the new Constitution. Considering that the matter was expressly before the committee, that this provision was dropped, and that the convention acquiesced in so doing, the conclusion is hardly to be resisted that it was dropped purposely; and if so, that the intention must have been not to restrict the election of officers to persons having the full qualifications of a registered voter. Those qualifications as to the length of residence are the same in both Constitutions, and retaining them for voters, and not for officers, indicates that in the view of the convention, when officers were to be elected, the provision for duly qualified electors would furnish sufficient safeguard against the choice of unsuitable persons.

But apart from this, it is held to be the law that " mu-

39

nicipal officers may be elected from non-residents of the corporation where there is no statute or constitution prohibiting it." See note 3 to section 195, 1 Dillon Municipal Corporations, 222, 3d edition ; State, *ex rel.*, Hardwick vs. Swearingen, 12 Geo., 23 ; State vs. Blanchard, 6 La. Ann. Rep., 515 ; Commonwealth vs. Jones, 12 Penn. St. Rep., 365. In the case here, however, it is not necessary that the rule should be stretched so far. The information does not allege that respondent was not a resident of De-Land at the time he was elected marshal and collector. It only alleges that he had not been residing there six months before his election, adding to this the further allegation that he was not a registered voter at the time of his election. If residence be not necessary, or if residence short of six months be sufficient, it follows that registration is not necessary either, as that cannot be had without the prescribed residence.

The case of the State, *ex rel.*, Off vs. Smith, 14 Wis., 497, in which it was held that an alien was ineligible to the office of Sheriff, although elected to it, is not considered in conflict with the cases before cited. The reason given for the decision is a good one—that ours are governments for the good of the people who compose the citizenship of the country, and it is inconsistent with the nature and spirit of such governments that aliens who owe allegiance elsewhere should be permitted to have a share in the conduct of public or official business.

There is no absolute connection between voters and officers, by which the qualifications for the latter should necessarily be determined by those for the former. Each is regulated to its own end, the former always by special provision, the latter sometimes not at all, except, as in this State the more important political and judicial places ; so that, as to all other officers, the people, in the absence of

other requirements, are left to their own discretion, limited only by a common understanding, equivalent to law, that prohibits electing to office any person who is not in some-wise a member of the body politic.

It is our opinion that the facts stated in the information do not render the respondent ineligible to the office he claims, and the demurrer is, therefore, sustained.