[No. 1023.   September 13, 1904.]

TERRITORY of NEW MEXICO ex rel., JESUS MA. SANDOVAL, Appellant v. GEORGE F. AL-BRIGHT, Appellee.

### SYLLABUS.

Laws 1903, p. 38, c. 27, section 3, was a portion of an act dividing Bernalillo county so as to create the new county of Sandoval, and provided that on or before April 1, 1903, the county commissioners of the present county of Bernalillo should give notice of an election to be held on April 14, 1903, in the county as it would be constituted after division, to elect certain officers, including a county assessor, and that the officers so elected should be actual bona fide residents of Bernalillo county, as constituted after its division pursuant to the act. Section 16 (page 43) provided that the act should take effect on and after April 14, 1903, at which date the officers elected at the special election should assume their respective duties. Laws 1903, p. 80, c. 49, amended the act quoted by

appointing two persons county commissioners for Bernalillo county after division, and providing that they should appoint an assessor not later than April 10, 1903. *Held,* that an assessor appointed pursuant to this amendment on March 23, 1903, which was before the act dividing Bernalillo county went into effect, was not entitled to the office.

Appeal from the district court of Bernalillo county before BENJAMIN S. BAKER, Associate Judge. Reversed and remanded.

EDWARD L. BARTLETT, Solicitor-General, and NIEL B. FIELD for appellant.

Mistaken assumptions of law or fact by the Legislature are not binding upon the courts.

> In the matter of John Hersom, 39 Maine 481-482; Postmaster General v. Early, 12 Wheat. 148; Van Norman v. Jackson, 45 Mich. 204; Byrd v. State, 57 Miss. 243, 34 Am. R. 440; Davis v. Delpit, 25 Miss. 445; The Amelia, 1 Cranch, 35; Saltens v. Tobias, 3 Paige 344; Lasher v. People, 183 Ill. 226, 47 L. R. A. 802.

The law does not require a county assessor to be a resident of his county.

> Territorial Organic Act, secs. 5 and 6; Compiled Laws of 1897, secs. 772 to 775, inclusive, which statutes are silent as to any residence qualifications.

The only statutes which attempt to prescribe residence qualifications are

> Sections 660 and 664, Comp. Laws 1897. See State ex rel. Gill v. The Supervisors of Milwaukee County, 21 Wis. 447-448; and see, also, State of Ohio, etc., v. Choate, 11 Ohio 513-514; State v. Swearengen, 12 Ga. 23; Com. v. Jones, 12 Pa. St. 370; State ex rel. O'Connell v. Nelson, 34 Pac. 562; Com. v. Sheriff, 4 S. & R. 276; Norwood v. Holden, 45 Minn. 316; State v. George, 23 Fla. 585; State v. Messmore, 14 Wis. 177.

This legislation is void because it attempts to deprive Sandoval of his office without due process of law.

Territory v. Ashenfelter, 4 N. M. 147-148.

The cases of Cunningham v. Conkling, 7 N. M. 445 and Eldodt v. Territory, 10 N. M. 141 do not contain a single expression in conflict with the Ashenfelter case.

See Taylor and Marshall v. Beckham (No. 1), 178 U. S. 570-571; Kennard v. Louisiana ex rel. Morgan, 92 U. S. 481; Foster v. Kansas, 112 U. S. 205-206; Wilson v. North Carolina, 169 U. S. 592-593 and 595; Boyd v. Thayer, 143 U. S. 135; Territory v. Van Gasken, 6 Pac. 33, 36, 37, 39; Marbury v. Madison, 1 Cr. 137.

The legislation is void because it denies to Sandoval the equal protection of the laws.

Barbier v. Connolly, 113 U. S. 31; Yick Wo. v. Hopkins, 118 U. S. 369; Exparte Virginia, 100 U. S. 346; Pembing Mining Company v. Pennsylvania, 125 U. S. 188; Henderson v. Mayor of N. Y., 92 U. S. 268; Smyth v. Ames, 169 U. S. 527; Neal v. Delaware, 103 U. S. 397; Soon Hing v. Crowley, 113 U. S. 710; McPherson v. Baker, 146 U. S. 39.

The legislation is void because it is not a lawful exercise of the legislative power granted by Congress.

In re Attorney General, 2 New Mexico 59; National Bank v. Yankton, 101 U. S. 133; Linford v. Ellison, 155 U. S. 506; Hornbuckle v. Toombs, 18 Wall, 655; 1 Dill. Mun. Cor., sec. 328; People v. Daniels, 6 Utah 288; Linford v. Ellison, 7 Utah 166; Breninger v. Belvidere, 44 N. J. Law 352.

The legislation is void because it regulates county affairs, and grants special privileges and franchises in violation of the act of Congress.

Commonwealth v. Patton, 88 Pa. St. 259; Montgomery v. Commonwealth, 91 Pa. St. 133; Snowdens Appeal, 96 Pa. St. 422; Morrison v.

Bachert, 112 Pa. St. 329; Frost v. Cherry, 122
Pa. St. 420-426; State v. Furgerson, 33 N. H.
431; Frey v. Michie, 68 Mich. 329; Cooley Con.
Lim. (5 Ed.), 233.

W. B. CHILDERS, for appellee.

Is that part of section 3, of the act of March 10,
1903, as amended by the act of March 12, 1903, appoint-
ing T. C. Gutierrez and Severo Sanchez county commis-
sioners for the county of Bernalillo, as the same was con-
stituted after the creation of Sandoval county, and au-
thorizing the board of commissioners to appoint an as-
sessor for Bernalillo county, valid legislation?

8 Am. and Eng. Ency. of Law, 815 and
cases cited; Hussy v. Smith, 99 U. S. 20; Mc-
Dowell v. U. S., 159 U. S. 610; Nofire v. U. S.,
164 U. S. 661; Ball v. U. S., 140 U. S. 125; Nor-
ton v. Shelley Co., 118 U. S. 425; Insurance
Company v. Seaman, 80 Federal 357; Fox v.
McDonald, 21 L. R. A. 537; State v. Baumbach,
12 Wis. 310; People v. Morrell, 21 Wend. 563,
576; Connor v. Mayor of New York, 5 N. Y.
285-295; The State and De Guenther v. Doug-
lass, 26 Wis. 428, 7 Am. Rep. 87; State v. Davis
44 Mo. 129; People v. Haskell, 5 Cal. 357; At-
torney General v. Squires, 14 Cal. 12; Note to
Hoke v. Henderson, 25 Am. Dec. 703; Butler
v. Pennsylvania, 10 How. 402, 416; Stewart v.
Jefferson Police Jury, 116 U. S. 133; Taylor v.
Beckham, 178 U. S. 548; Crenshaw v. U. S.,
134 U. S. 99; Long v. Mayor, 81 N. Y. 426; Peo-
ple v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103;
Denver v. Hobart, 10 Nev. 30; Territory v. Van
Gaskin, 6 Pac. 30 (Mont).

As a general proposition, residence is necessary as
a qualification for holding office.

State v. Hartshorn, 17 Ohio Rep. 135; 23
Am. & Eng. Ency. of Law, 426; Mank v. Lock,
70 Iowa 266, 30 N. W. 566; State v. Hixon, 27
Ark. 398; State v. Messmore, 14 Wis. 163;
State v. Choate, 11 Ohio 511; Mechem on Pub-
lic Officers, sec. 67; State v. McMillen, 23 Neb.
385, 36 N. W. 387.

The express power to create new counties carries
with it the power to make all laws necessary and
proper to carry into execution those powers.

United States v. Fisher, 2 Cranch 358;
McCullong v. Maryland, 4 Wheaton 316; 1
Roses Notes, 212 & 872; Cooley on Constitu-
tional Limitations, 77; Sprague v. Brown, 40
Wis. 612.

The power of the Territorial Legislature is full and
complete, except so far as restricted by the acts of Con-
gress.

Baca v. Perez, 8 N. M. 187; Fletcher v.
Peck, 6 Cranch 128; Ogden v. Saunders, 12
Wheaton 213; Trustees of Vincennes Univer-
sity, 14 How. 268; 7 Roses Notes, 732; Miners
Bank v. Iowa, 12 Howard 7.

### STATEMENT OF THE CASE.

This is a proceeding by information in the nature
quo warranto, brought to try the title of the appellee
George F. Albright, to the office of assessor of the county
of Bernalillo. The information alleges that the relator
Jesus Ma. Sandoval was duly elected assessor of Bernal-
illo county at the general election held on the fourth day
of November, 1902; that within the time prescribed by
law the relator duly qualified and entered upon the dis-
charge of the duties of the office; that the relator has
never resigned, vacated or abandoned the said office;
that ever since his election and qualification he
has continued to discharge the duties of the office,

and that the term for which he was elected has not expired. The information further alleges, that on the twenty-third day of March, 1903, and while the relator was in lawful possession of, and in the discharge of the duties of said office, the respondent George F. Albright, without authority of law did unlawfully usurp the said office and take possession of the room assigned for the use of the assessor of Bernalillo county in the court house, and of the books, paper, and other insignia of said office; has unlawfully assumed to be the assessor of said county and by such unlawful usurpation and intrusion the respondent has become possessed of the emoluments, immunities and privileges thereof. The information further alleges that the respondent claims the office by virtue of a pretended appointment by the board of county commissioners of Bernalillo county which was pretended to be made under authority of an act of the legislative assembly of the Territory of New Mexico entitled "An act to create the county of Sandoval," approved March 10, 1903, as amended by an act entitled "An act to create the county of Sandoval," approved March 12th, 1903.

The information further alleges that said legislation was and is void, in so far as it attempted to authorize or empower the selection or appointment of any other person than the relator to the office of assessor of the said county, for the term or any part of the term for which said relator was elected by the people of Bernalillo county; that said legislation is in contravention of the Constitution of the United States and also the laws of Congress prohibiting special legislation regulating county affairs, and is not a rightful subject of legislation.

The acts of the Legislature, in so far as they are involved in this case, are sections 3 and 16, chapter 27, Laws of 1903, and chapter 49, Laws of 1903, and are as follows:

*Chapter 27 "Act creating Sandoval County."*

"Sec. 3. On or before the first day of April, 1903, the county commissioners of the present county of Bernalillo, shall give notice of an election to be held on the fourteenth day of April, 1903, within the county of Bernalillo as the same will be constituted after the passage of this act, for the election of two county commissioners one probate judge, and one assessor, to serve until their successors are elected and qualified at the next general election. Said officers so named in this section to be at the time of said election actual bona fide residents of the said county of Bernalillo as the same shall be constituted after the passage of this act. The returns of said election to be made as the returns of general elections are made."

"Sec. 16. This act shall take effect and be in force on and after the fourteenth day of April, 1903, at which date or as soon thereafter as qualified the first officers of said county elected at the special election of 1903 shall assume their respective duties, and the said county shall be fully established as a county in the Territory of New Mexico, and the provisions herein contained providing for a returning board and its action in calling the election and canvassing the votes, and the method of ascertaining the debt of Sandoval county, to Bernalillo county, shall take effect and be in force from and after the passage of this act."

*Chapter 49, amending above act.*

"Section 1. That section 3 of the act to create the county of Sandoval, approved on March 10, 1903, be and the same is hereby amended so as to read as follows:

"Sec. 3. That T. C. Gutierrez, to fill the unexpired term of the second district, and Severo Sanchez, be and they hereby are appointed and constituted county commissioners for the county of Bernalillo, as the same is constituted after the creation of Sandoval county, and the said T. C. Gutierrez and Severo Sanchez shall qualify as said county commissioners on or before

the fifth day of April, 1903, and shall together with the county commissioner now in office for the said county of Bernalillo, hold a meeting not later than the tenth day of April, 1903, and said three persons as a board of county commissioners for Bernalillo county shall appoint one assessor and one probate judge for the said county of Bernalillo to serve until their successors are elected and qualified at the next general election."

"Sec. 2.   On or before thirty days after said board of county commissioners of Bernalillo county has duly qualified as such commissioners, they shall assemble as a board of county commissioners and shall divide said county of Bernalillo into county commissioners districts."

"Sec.   3.   This act shall be in force and take effect from and after its passage."

To this information a demurrer was filed and overruled.   Respondent then filed answer, in which it is admitted that the relator was duly elected for the term of two years, and duly qualified and entered upon the discharge of his duties as such assessor, as alleged in the information; but denies that the relator was the only person qualified to hold the said office, and denies also that the office did not become vacant, alleging that the office became vacant March 10, 1903, the date upon which the act was approved creating Sandoval county, and that the relator was at the time of filing the information, and had been for a long time previous thereto a resident of that portion of Bernalillo county incorporated into Sandoval county by the act of March 10, 1903, and was disqualified from holding the office of assessor of Bernalillo county.   The answer avers that the respondent Albright was duly appointed under the provisions of the act creating Sandoval county and the act amendatory thereof, and that he was duly qualified and lawfully entered upon and continued to discharge his duties as such assessor.   The answer further denies that the acts of the Legislature are void; that they are in

contravention of the Constitution or laws of the United States; that the same are special legislation prohibited by the acts of Congress, or that the same are not rightful subjects of legislation as set forth in the information.

A demurrer was filed to the answer, which was by the court overruled and judgment was rendered in favor of the appellee. From that judgment this appeal is prosecuted.

### OPINION OF THE COURT.

McFIE, J.—In deciding this case in the court below, the learned judge who tried the cause, held that section 3 of chapter 27, Laws of 1903, and section 1, chapter 49, Laws of 1903, in effect, declared the office of assessor of Bernalillo county vacant. In construing these sections the court arrived at the conclusion, that it was the intention of the Legislature to declare that office vacant and therefore, although those sections do not contain a declaration to that effect, the court was of the opinion that those sections should be given the effect of such a declaration. We cannot concur with the trial court in this conclusion.

The facts admitted by the pleadings are, that the relator Jesus Ma. Sandoval, was elected by the people of Bernalillo county at a general election held on the fourth day of November, 1902, to the office of assessor of the county; that he duly qualified on the first day of January, 1903, and entered upon the discharge of the duties of the office; that the term for which he was elected was two years from the date of his qualification, and that he did not resign, vacate or abandon the office voluntarily. It must be conceded therefore that ·Mr Sandoval was still the assessor of that county, unless the Legislature by the acts referred to declared the office vacant in express terms or clearly intended so to declare. That the Legislature did not so declare in express

terms, will not be denied, therefore we must examine
the legislation involved with a view of ascertaining what
the intention of the Legislature was, in relation to the
office of assessor of Bernalillo county, that being the
only office directly involved in the case.

Chapter 27, Laws of 1903, is an act for the creation
of, and government of the new county of Sandoval. It
is not reasonable to take the view, that by such legisla-
tion it was the intention of the Legislature to deprive
officers, elected by the people of the old county of offices
held by them, and against their will and consent, un-
less such legislation necessarily has the effect of vacat-
ing such offices. The old county does not become a new
county by the withdrawal of some of its territory; its
organization remains the same, and only such changes
can, of right, be made, as necessarily result from the
formation of the new county. In such case, legislation
relating to those holding office in the old county, should
not be given the effect of declaring such office vacant,
unless the intention to do so is manifest. Nothing
should be left to the realm of doubt or inference, for,
as was said in the case of Territory v. Ashenfelter, 4 N.
M. 147, removal from office "deprives the possessor of a
valuable private right."

Section 3, chapter 27, simply provides for the
election by the people of two county commissioners, one
probate judge and one assessor for the county of Ber-
nalillo, as the same will be constituted after the taking
effect of the act creating Sandoval county, and further
provides for the giving of notice for such election and
how the returns shall be made. There is not one word
in that section declaring those offices vacant, nor is
there such in the entire chapter, for that matter. This
omission is very significant, inasmuch as it clearly indi-
cates that the Legislature was acting upon the assump-
tion and theory that the creation of the new county of
Sandoval necessarily created a vacancy in the offices of
all such officers of the old county as resided within the

geographical limits of the new county. This seems to be a much more reasonable interpretation of the act, than that the Legislature intended to single out certain officers and declare their offices vacant in the midst of their terms, without any reason being assigned, as an exercise of a purely arbitrary power. In support of the construction given this act by the learned judge who tried the cause, reference was made to the case of Territory v. Van Gaskin, 6 Pac. 30. In this case the Supreme Court of Montana sustained a legislative act making appointments to fill vacancies, but by reference to the act under consideration in that case, it will be found, that the act in terms declared the offices of the former commissioners vacant and then proceeded to fill the vacancies. The act was as follows:

"That the offices of county commissioners of the county of Custer be, and the said offices are, hereby declared to be vacant, and no official duty shall be performed by the persons constituting the present board of county commissioners, except to make reports . . . and that William Van Caskin, George M. Miles and Thomas J. Ryan are hereby appointed commissioners of Custer county."

The Legislature of Montana first declared the offices vacant, and then filled them by direct appointments. The Legislature of this Territory, however, did not declare the office of assessor of the old county vacant, but provided in one act for the election by the people of an assessor, and by a subsequent act, two days later, that the county commissioners should appoint an assessor for Bernalillo county. It is difficult to account for the failure of the Legislature to declare a vacancy in the office of assessor, except upon the theory that the Legislature was of the opinion that the holder of the office resided in the new county, and that the passage of the act creating the new county, rendered the assessor of Bernalillo county ineligible to hold the office to which he had been elected. That this was the view taken by coun-

sel for the respondent when the answer was prepared, appears from the following paragraph of the answer:

"Further answering, this respondent alleges that by virtue of an act entitled 'An act to create the county of Sandoval,' approved March 10, 1903, there was created the county of Sandoval in the Territory of New Mexico, and that the said relator at the time of the creation of said county of Sandoval was and has been for a long time and many years previous thereto, a resident of the portion of Bernalillo county which was incorporated into and made the county of Sandoval, and that by virtue of the passage of said act creating the county of Sandoval, the said relator became and was and still is a resident of the said county of Sandoval and not of the county of Bernalillo, and, therefore, the said relator ceased to be upon the passage of said act a resident of the county of Bernalillo and was disqualified from exercising the duties of the office of assessor of the said county of Bernalillo to which he had therefore been elected."

If then, the Legislature did not intend to declare a vacancy but only intended to provide an officer to fill a vacancy believed to exist as a necessary result of the passage of the act creating Sandoval county upon the theory that residence in the new county disqualified the assessor from continuing to hold his office, the effect is the same as if the Legislature had no power to declare or fill a vacancy. It does not seem necessary or profitable in this case, to consider the question of the power of the Legislature, for the reason, that, however adequate the power of the Legislature might be, if the Legislature did not see fit, nor intend, to exercise the power to declare the office of assessor of Bernalillo county vacant by the legislation enacted the legal right of the incumbent elected by the people of the county is not affected by the legislation and no vacancy existed, to be filled either by election or appointment. Providing for the election or appointment of a successor for a legally qualified in-

cumbent of an office is of no effect whatever so far as the incumbent is concerned prior to resignation, abandoment or expiration of the term for which he was elected neither of which occurred in this case, as is admitted by the pleadings.   Respondent's counsel insists however, that because  the relator, Sandoval, resided within the geographical limits of Sandoval county and was not a resident of Bernalillo county wherein he was elected, that the legal effect of the enactment of the law creating Sandoval county, was to disqualify him for holding the office to which he had been elected in Bernalillo county, and that the passage of that act *ipso facto* created a vacancy in the office for which a successor was provided.   In our opinion, this position is not well taken either as to the disqualification of Sandoval or the creation of a vacancy in the office of assessor held by him, at the time the laws referred to were enacted. An examination of our statutes fails to dsiclose any provision requiring residence in the county as a qualification for holding the office of assessor.   In section 5 of the organic act, it is provided, that members of the council and house of representatives shall reside in their respective districts, and section 6 provides:

"And be it enacted that every free, white male inhabitant above the age of twenty-one years who shall have been a resident of said Territory at the time of the passage of this act, shall be entitled to vote at the first election, and shall be eligible to any office within the said Territory; but the qualifications of voters and of holding office, at all subsequent elections shall be such as shall be prescribed by the legislative assembly."

The Legislature is, by this section, clothed with power to create the office of county assessor, and prescribe as one of his qualifications for office, that he shall reside in the county for which he is elected to serve. The office of county assessor in New Mexico was created by act of 1884.   Section 772 to 775 inclusive, Compiled

Laws of 1897, appear to embrace all the provisions of our laws in regard to that office, and the qualifications, manner of selection and tenure of that officer, except as to the filling of vacancies. There is no residence qualification provided for. Section 664, Compiled Laws of 1897, provides for the filling of vacancies in county offices, except that of county commissioners, and does provide, that in filling such vacancies the person appointed shall be a resident of the county. The manner of filling vacancies in county offices, was changed by chapter 2, Laws of 1901, the power being vested in the Governor, but this act does not include a residence qualification. Section 3, chapter 27, also provides that the officers to be elected shall reside in the county of Bernalillo, but chapter 49 does not so provide.

At the time the legislation in question was enacted, there was no statutory provision for a residence qualification applicable to the office of county assessor, and the court should not engraft upon the statute by construction, a qualification which the Legislature, with full power to act, has seen fit to omit.

We are thus logically led to the conclusion that, even if it was admitted that Sandoval had been for years and was still residing in what would become Sandoval county when the act took effect, that fact would neither disqualify Sandoval from holding his office nor have the effect of rendering the office vacant. The Legislature acted upon a mistaken view of the law, the result of which was to provide for the election of an officer to an office not vacant, but which, on the contrary, was in the possession of a legally elected and qualified incumbent.

In the case of Postmaster General v. Early, 12 Wheat. 148, Chief Justice Marshall in delivering the opinion of the court said:

"It is true that the language of the section indicates the opinion that jurisdiction existed in the circuit courts rather than intention to give it; and a mistaken

opinion of the Legislature concerning the law does not make law."

In the matter of John Herson, 39 Maine 481, the court said:

"It is said that the intention of the Legislature to confer such a jurisdiction is clearly ascertainable from the provisions of the act, and that such intention should be made effectual. The intention of a legislative body is by the law regarded as a rule for a court to determine what construction the language which the Legislature has used should receive. But no rule of construction is known, or admitted, by which a clearly perceived defect, or omission in legislation to accomplish an important purpose in criminal law, has been, or can be supplied by inferring it from language used for another purpose not suited nor intended to supply that defect. Even in the construction of wills, in which the intention of the testator is to be pre-eminently the guide of the court, that intention can not, however clearly discoverable, be made effectual, if there be found in the will no language used by which the object can be accomplished."

In District of Columbia v. Hotton, 143 U. S. 27, the court said:

"It is contended, however, that by the act of January 31, 1883 (22 Stat. 412, c. 41; Sup. to Rev. Stat. (2 Ed.) 397), Congress recognized said section 354 as a still subsisting law, and that that consideration should compel a reversal of the judgment below. We are not impressed with this contention.

"But even if Congress had supposed that that section was still the law, when as a matter of fact, it had been repealed, it would make no difference in this consideration."

So in this case, we find no language in the act which can reasonably be held to declare a vacancy in the office of assessor of Bernalillo county, nor does the mistaken opinion of the Legislature as to the legal effect

of the passage of the act creating Sandoval county create such vacancy, nor render Sandoval ineligible to hold the office.

Chapter 49, Laws of 1903, became a law March 13, 1903, or two days after the approval of chapter 27. This latter act amends section 3 of chapter 27 by direct appointment of T. C. Gutierrez and Severo Sanchez county commissioners of Bernalillo county and provides that when qualified, the board shall appoint an assessor and a probate judge for Bernalillo county. Section 2 provides for the division of Bernalillo county into commissioner districts. There is no provision in this act declaring the office of assessor of the old county vacant, but simply for the appointment of an assessor. All that had been said, therefore, concerning section 3, chapter 27, is equally applicable to this amendatory act. The method of selecting an assessor was changed from an election by the people to appointment by the board of county commissioners. If the people had no legal right to elect an assessor for that county, the board of county commissioners had no legal right to appoint, and if such appointment was made, there being no vacancy, the appointment was of no legal effect, as the former incumbent, Sandoval, had a superior title to the office by reason of his election, qualification, possession of the office, and the fact that his term had not expired.

Where districts or counties are divided by legislative enactment, officers required to reside in the district or county in which they were elected, have a right to retain their offices by establishing their residence so as to remain in the old county, and a reasonable time allowed them to do so, even after the taking effect of the act.

In the State of Ohio, article 3, section 3, of the Constitution provided that:

"There shall be appointed in each county, not more than three nor less than two associate judges, who during their continuance in office, shall reside therein."

In the case of State of Ohio etc. v. Choate, 11 Ohio 513, the question of the effect of county division upon the tenure of office of these judges was under consideration, and in deciding the case the court said:

"It is, however, alleged that this rule will enable the Legislature at any time, by a general law, to oust from office without the form of impeachment and in violation of the spirit of the Constitution, many associate judges, and any president judge of this State, by changing the limits of the counties and of the circuits in which they severally reside, so as to place their residence in some other county or circuit. Arguments of this nature, which assume the possibility that a coordinate branch of government will wantonly violate its plain duty, ought to be held of little weight in a court of justice where the legal presumption obtains that every legal functionary will faithfully observe the obligations of duty imposed upon him by his oath of office. The general assembly, if it should ever attempt to violate a measure, as the argument supposes, could not effectually accomplish the object. The judges would in all cases, be able to defeat the scheme by a seasonable removal within the newly-prescribed limits of his county or circuit.

"So, in this case, had Choate preferred to retain his office, he could have changed his residence after the passage of the act attaching Milan to the county of Erie. This he neglected to do at the time; neglected to do when the special court was called requiring nis official attendance; neglected to do so at the May term of the court, and still neglected up to the second day of August."

In the case of Norwood v. Holden, 45 Minn. 313, the court said:

"It seems that it was assumed that if the relators had, by reason of the redistricting, become disqualified from taking their seats on the board in January, this created vacancies which the chairman of the boards of

town supervisors were authorized to fill. But this was a mistake, for it would not be one of the events the happening of which would create a vacancy, under the provisions of Gen. St. 1878, chap. 9, sec. 2."

In Minnesota at the time this case was decided, the statute provided that a commissioner "shall, at the time of his election be a resident of said district, and shall reside therein during his continuance in office."

The court held that changing the boundaries of a district after election did not have the effect of disqualifying the officer. State ex rel. O'Connel v. Nelson, 34 Pac. 562; State v. Swearengen, 12 Ga. 23; State v. George, 23 Fla. 585.

It is alleged in the information, and admitted in the answer, that the respondent, was appointed on the twenty-third day of March, 1903, and that he demanded and took possession of the office upon the same day. Section 16 of the act creating Sandoval county provides that the act shall not take effect until the fourteenth day of April, 1903. Therefore, at the time the respondent was appointed and attempted to take possession of the office, the county of Bernalillo was in the same condition as when the relator was elected, and the county of Sandoval was not in existence. There had been no change of boundaries, and even if a residence qualification existed, Sandoval resided in the county for which he was elected. Prior to the taking effect of the act creating the new county—thus changing the boundaries of the old—it is untenable to contend that a vacancy existed by reason of the act creating the new county, and that Sandoval was thereby disqualified from holding the office of assessor in Bernalillo county to which he had been elected.

We are, therefore, of the opinion that the appointment of the respondent, prior to the taking effect of the act creating the county of Sandoval was unauthorized and of no effect, even if it were true that the creation of the new county, *ipso facto*, vacated the offices of all

those officers of the old county residing within the boundaries of the new county when created. No vacancy existed in the office of assessor of Bernalillo county, the relator's title to that office remained unimpaired and the attempt of the respondent to take possession of the office on the twenty-third of March, 1903, or about twenty days prior to the taking effect of the act creating the new county, was without warrant of law and was a usurpation in law as against the superior title of the relator who was the rightful incumbent and in the lawful possession of the office.

Section 3 of the act creating Sandoval county, provides for the election of an assessor and three other officers by a vote of the people of Bernalillo county as the same will be constituted after the new county is created, but by the terms of the act this election was to be held on the fourteenth day of April, 1903, the date upon which the act took effect. It is clear, that at the time this act was passed the Legislature understood that no vacancy would exist in the office of assessor of the old county prior to the taking effect of the act creating the new county. It is somewhat strange, to say the least, to find the same Legislature, two days later, passing an amendatory act (chap. 49, Laws of 1903), providing for the appointment of an assessor for Bernalillo county by the board of county commissioners thereof on the tenth day of April, 1903, four days prior to the division of that county. To sustain this legislation upon which the appellee relies, it is necessary to hold that the power to remove and appoint county officers, is vested exclusively in the Legislature, unlimited by act of Congress.

Whatever may have been the power of the Legislature, upon this subject, prior thereto, since the enactment of the act of Congress approved July 30, 1886, and the act amendatory thereof, approved July 19, 1888, express limitations have been placed upon the power of the Legislature to regulate county affairs, which in our

opinion renders the position above stated unmaintainable in this action. We do not deem a discussion of this question necessary to a decision of this case, and as it will necessarily be more fully considered in the decision of the case of the Territory on the relation of Thomas J. Curran et al. v. Thomas C. Gutierrez and Severo Sanchez, which is a companion case involving the validity of the same acts of the Legislature under consideration in the present case, we will refrain from any further reference to the subject here.

From the views above expressed it follows that the demurrer to the answer should have been sustained in the court below, and that the court erred in rendering judgment quashing the quo warranto proceedings and dismissing the cause.

The judgment of the court below is reversed and the cause remanded with directions to reinstate the cause and proceed in accordance with the views expressed herein.

Mills, C. J., concurs; Parker, and Pope, JJ., in the result.

Baker, A. J., having heard the case below, took no part in this decision but files herewith reasons in support of decision below. Mann, A. J., not having heard the argument in this court, did not participate in this decision.

### DISSENTING OPINION.

Justice Baker, by virtue of section 884, Compiled Laws of 1897, files his reasons for his decision in the district court, which can be best done by quoting his opinion, filed in this cause in the district court, as follows:

"Territory of New Mexico, district court Bernalillo county.

"Territory of New Mexico on the relation of Jesus Ma. Sandoval, v. George F. Albright.

"This cause of action is based upon an information by the solicitor-general of the Territory against George F. Albright, requiring the said Albright to show by what authority of law he holds the office of assessor of Bernalillo county. For answer to the information the respondent Albright says he holds said office by virtue of an appointment by the board of county commissioners of said county, acting under and by virtue of section 3 of an act of the Legislature creating Sandoval county, approved March 10, 1903, and the amendment thereof, approved March 12, 1903. Respondent further answering, says said Jesus Ma. Sandoval was at the time of the creation of said Sandoval county a resident of the Territory comprising said Sandoval county, consequently not a resident of Bernalillo county and therefore not eligible to hold the office of assessor of said Bernalillo county. To the answer of respondent the solicitor-general files a demurrer.

"The demurrer raises the legality of said section 3 of chapter 27, Session Laws of New Mexico, 1903, and said chapter as amended by chapter 49 of said Session Laws. Said section 3 of said chapter 27 reads as follows:

" 'On or before the first day of April, 1903, the county commissioners of the present county of Bernalillo shall give notice of an election to be held on the fourteenth day of April, 1903, within the county of Bernalillo as the same will be constituted after the passage of this act, for the election of two county commissioners, one probate judge and one assessor, to serve until their successors are elected and qualified at the next general election. Said officers so named in this section to be at the time of said election actual bona fide residents of the said county of Bernalillo as the same shall be constituted after the passage of this act. The returns of said election to be made as the returns of general elections are made.'

"Said amendment contained in said chapter 49 reads as follows:

" 'Section  1.    That section 3 of the act to create the county of Sandoval approved on March 10, 1903, be and the same is hereby amended to read as follows:

" 'Section 3.    That T. C. Gutierrez to fill the unexpired term of the second district and Severo Sanchez be and they hereby are appointed and constituted county commissioners for the county of Bernalillo as the same is constituted after the creation of Sandoval county, and said T. C. Gutierrez and Severo Sanchez shall qualify as said county commissioners on or before the fifth day of April, A. D., 1903, and shall together with the county commissioners now in office for the said county of Bernalillo, hold a meeting not later than the tenth day of April, 1903, and the said three persons as a board of county commissioners for Bernalillo county shall appoint one assessor and one probate judge for the said county of Bernalillo to serve until their successors are elected and qualified at the next general election.'

"Said section 3 of chapter 27 in effect declares vacant the office of assessor of said Bernalillo county by providing for an election of an assessor of said county. To say that it was not the intent and purpose of the Legislature in said section 3 to not declare said office vacant, it would have been more than useless for the Legislature to have provided for the election to fill said office when there was no vacancy to fill, said office being filled by said Sandoval.    Certainly it will not be contended but what the Legislature intended to declare the said office of assessor vacant.    Whether they had the power so to do is another question.    The Legislature, construing and acting under section 3 of chapter 27, amended said section 3 as seen by section 1 of chapter 49 of Session Laws of 1903.    Therefore it must be conceded that the Legislature when it passed said section 3 intended to declare said office of assessor vacant and that when it enacted said chapter 49, it so construed

the said section 3. To say the Legislature did not intend in said section 3 to declare said office vacant is to make the language of said section referring to the election of an assessor meaningless, as well as the provision for the appointment of an assessor by the county commissioners in said section 1.

"The demurrer raised three questions: first, had the Legislature the power to summarily remove Sandoval from the office of assessor of Bernalillo county; second, had the Legislature power to authorize the county commissioners of Bernalillo county to fill such vacancy; third, does his non-residence in Bernalillo county make said Sandoval ineligible to hold said office, or in other words, is he eligible to be reinstated?

"Section 1857, Revised Statutes of the United States 1878, provides: 'All county officers shall be appointed or elected in such manner as may be provided by the Governor and legislative assembly of each Territory.' Section 7 of the organic act of the Territory of New Mexico provides, 'that the legislative power of the Territory shall extend to all rightful subjects of legislation, consistent with the Constitution of the United States and the provisions of this act.' As well the legislative acts cannot conflict with any act of congress thereafter passed.

"The provision by the Legislature for the removal of county officers is certainly a rightful subject of legislation and is legal, unless prohibited by the Constitution of the United States or some act of Congress.

"It is contended that the act of removing Sandoval as assessor is in conflict with the fourteenth amendment of the Constitution of the United States, which is as follows:

" 'No State shall . . . deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.'

"It is contended by the learned counsel for the solicitor-general that Sandoval had been deprived of his property without due process of law. In other words, Sandoval's title to the office and its emoluments for the full term of two years was a vested right which is protected by said fourteenth amendment, unless said Sandoval was removed by a court of competent jurisdiction after having had a fair and impartial trial and a full opportunity to make his defense, and in support of this proposition of law, the learned counsel cites Kennard v. Louisiana, 92 U. S. 480; Foster v. Kansas, 112 U. S. 201.

"Did the Supreme Court of the United States in Kennard v. Louisiana, or Foster v. Kansas, supra, thus declare the law? In the celebrated Goebel case, entitled Taylor and Marshall v. Beckham, 178 U. S. 548, quoting from page 571:

" 'So in Kennard v. Louisiana, 92 U. S. 480, concerning the right of Kennard to the office of associate justice of the Supreme Court of Louisiana, jurisdiction was taken on the ground that the constitutionality of the statute under which the disputed title to office was tried was drawn in question. The court, speaking by Mr. Chief Justice Waite, said:    'The question before us is, not whether the court below, having jurisdiction of the case and the parties, have followed the law, but whether the law, if followed, would have furnished Kennard the protection guaranteed by the Constitution. Irregularities and mere errors in the proceedings can only be corrected in State courts. Our authority does not extend beyond an examination of the power of the courts below to proceed at all.' "

"The writ in Foster v. Kansas, 112 U. S. 201, rested on the same ground.

"In each of the foregoing cases, the determination of the right to the office in dispute was reposed in the judicial courts, and no question was expressly considered by this court as to whether the right to a public

office of a State was or was not protected by the fourteenth amendment.

"In North Carolina, the Legislature created the office of State railroad commissioner. The statute also provided that such 'officer might be suspended by the Governor and his successor appointed by the Governor.' In Wilson v. North Carolina, 169 U. S. 593, the Governor removed by suspending without a hearing, Mr. Wilson as State railroad commissioner and appointed one Caldwell to fill the vacancy. Mr. Wilson contended this was in conflict with the fourteenth amendment of the Constitution of the United States. In this case the court said:

" 'What kind and how much of a hearing the officer should have before suspension by the Governor was a matter for the State Legislature to determine, having regard to the Constitution of the State. The procedure provided by a valid State law for the purpose of changing the incumbent of a State office will not in general involve any question for review by this court.'

"The court further said:

" 'No such fundamental rights were involved in the proceedings before the Governor. In its internal administration the State (so far as concerns the Federal Government) has entire freedom of choice as to the creation of an office for purely State purposes, and the terms upon which it shall be held by the person filling the office.'

"The court further said:

" 'Although an office has been held in North Carolina to be generally and in a certain restricted sense the property of the incumbent, yet in this case the Supreme Court held that the incumbent, in taking the office, holds it subject to the act creating it, which binds him by all its provisions, all of which were held to be valid.'

"In Taylor and Marshall v. Beckham, supra, discussing the relation of an officer to the appointing or

electing power , the Supreme Court of the United States says:

" 'In Grenshaw v. United States, 134 U. S. 99, 104, Mr. Justice Lamar stated the primary question in the case to be: "Whether an officer appointed for a definite time or during good behavior had any vested interest or contract right in his office of which Congress could not deprive him," and he said, speaking for the court: "The question is not novel.    There seems to be but little difficulty in deciding that there was no such interest or right." Butler v. Pennsylvania, supra; Newton v. Commissioners, 100 U. S. 584; Blade v. United States, 103 U. S. 227, and many other cases.

" 'The decisions were numerous to the effect that public offices are mere agencies or trusts, and not property as such.    Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered.    Nor does the fact that the Constitution may forbid the Legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent, change its character or make it property.    True, the restrictions limit the power of the Legislature to deal with the office, but even such restrictions may be removed by constitutional amendment.    In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.'

"In Long v. The Mayor, 81 N. Y. 426, the court says:

" 'It is claimed that the act in question shortens the duration of plaintiff's term of office, so that the term declared by statute, in force when he was elected, to be for two years, is made by the act of 1870, a term for five months.    We see no legal objection thereto.    The office was not created by or regulated in any manner by the Constitution.    The Legislature had entire control over the matter.    The office was created its term was fixed by that body, and it could be changed by it.

The law could be amended or repealed, and this was the effect of the provision of the act of 1870. A term ending at a time stated was substituted for a term limited to two years. The original term was thus shortened. The legislation was aimed at the office, not the incumbent. But however viewed, the act complained of was within the lawful exercise of power by the Legislature and within the principle frequently reiterated by the courts of this State, that a public office is not a grant, and the right to it does not depend upon, or partake of the nature of a contract. Connor v. Mayor, 2 S. and F. 355, 369; affirmed, 5 N. Y. 285; Smith v. Mayor, 37 Id. 518.'

"In 44 Missouri 129, the court says:

" 'In England offices are considered incorporeal hereditaments, granted by the crown, and a subject of vested or private interests; not so in American States. They are not held by grant or contract, nor has any person a private property or vested interest in them,' citing a long list of cases.

"The proposition that a public office created by legislative enactment is not a vested right is well settled. Taylor v. Beckham, supra.; Wilson v. North Carolina, supra.; Butler v. Pennsylvania, 10 Howard 402; State v. Davis, supra; note in Hoke v. Henderson, 25 Am. Dec. 701; People v. Squires, 14 Calif. 12.

"This last citation is strikingly in point. It in effect removes one officer and puts another person in his place to continue in that office and to receive its emoluments, without a hearing and without being permitted to offer any defense. State v. Douglas, 7 Am. Dec. 87 and note; Denver v. Hobart, 10 Nev. 30; People v. Haskel, 5 Calif. 387; People v. Hurlbut, 24 Mich. 44, 9 Am. Dec. 103; Conner v. The Mayor, 5 N. Y. App. 285."

"In the last case the court said:

" 'Where an office is created by a legislature, it is wholly within the control of the Legislature, the term,

the mode of appointment and the compensation may be altered at pleasure, and the latter may even be taken away without abolishing the office. Such extreme legislation is not to be deemed probable in any case. But we are not discussing the legislative power, not its expediency or propriety. Having the power the Legislature will exercise it for the public good and it is the sole judge of the exigency which demands its interference.'

"In Territory v. Van Gaskin, 6 Pac. 30, the Legislature of the Territory of Montana enacted the following law:

" 'That the offices of county commissioners of the county of Custer be, and the said offices are, hereby declared to be vacant, and no official duty shall be performed by the persons constituting the present board of county commissioners, except to make reports. . . . . and that William Van Gaskin, George M. Miles and Thomas J. Ryan are hereby appointed commissioners of Custer county.'

"The court in this case said:

" 'By the enactment of the law appointing the respondents to the office declared vacant, until the commissioners thereafter to be elected assumed the duties of their office, the Governor and the legislative assembly acted within the limits of the act of Congress which required that the county officers should be appointed or elected in such manner as they might provide. The Governor and legislative assembly have the power to provide the manner of the appointment; therefore, they had the power to appoint directly.'

"The foregoing citations and quotations settle the proposition that a public office is neither property, nor in the nature of property, nor a private, vested right that is protected by the fourteenth amendment of the Constitution of the United States. There are a number of authorities that hold differently. The States of Florida, Georgia and North Carolina very pointedly

and conclusively are in conflict with the line of authorities herein cited. The courts of the Territories are bound by the decision of the Supreme Court of the United States. Even if it were a fact, which I do not admit by any means, that the reasoning as well as the justice would be on the side of the holdings of the States of Georgia, Florida, North Carolina and some others, still I would be bound to follow the decisions of the Supreme Court of the United States, and in the language of Sandford, J., in Conner v. The Mayor, supra.

" 'We are now discussing the legislative power, not its expediency or propriety. Having the power, the Legislature will exercise it for the public good, and it is the sole judge of the exigency which demands its interference.'

"I am of the opinion that the Legislature has the power to terminate the tenure of any officer holding an office created by the Legislature; therefore the Legislature had the power to remove or legislate Sandoval out of the office of assessor of Bernalillo county, and in so doing they did not act derogatorily to, nor was their legislation in conflict with the fourteenth amendment of the Constitution of the United States, as contended by the learned counsel for the solicitor-general.

"This brings us to the second proposition: Had the Legislature power to fill the vacancy caused by the removal of Sandoval.

"This question was by me decided in the case of the Territory ex rel. Curran et al. v. Gutierrez et al. It was contended in that case by the learned counsel for the solicitor-general, as it is also in this case, that it required a general law to fill vacancies, otherwise such act of the Legislature would be in conflict and therefore prohibited by the last paragraph of the act of Congress, commonly called the Springer Act, which reads as follows:

"In all other cases where a general law can be made applicable, no special law shall be enacted in any of the Territories of the United States by the Territorial Legislature thereof.'

"This case is one which belongs to the 'in all other cases.'

It is also contended that the Legislature, section 1, chapter 2, Laws of New Mexico, 1901, by general law fixed the manner of filling vacancies in county offices, and, therefore, that this law is in conflict with the said section 1, as well as in conflict with said paragraph of the Springer Act. It certainly could not successfully be contended that if the Legislature had passed a law that the Legislature should fill all vacancies occurring in county offices, that it would have been in conflict with said paragraph of the Springer Act for the reason that it would be a general law. Did not the Supreme Court of Montana, in Territory v. Van Gaskin, supra, speak wisely when it said: 'The Governor and legislative assembly have the power to provide the manner of appointment; therefore, they had the power to appoint directly.' Section 1877 of the Compiled Laws of the United States, supra, provides, 'that county officers shall be appointed or elected in such manner as may be provided by the Governor and the legislative assembly.' Did they not in this case provide the manner the office of assessor of Bernalillo county should be filled? Would it not seem a little absurd for the Legislature in which all power is conferred by Congress to say in what manner county officers shall be appointed or elected, to spread upon its statute books an act saying the Legislature may fill county offices or vacancies when the power already rests with it? Would it not be like unto a man getting permission or authority from himself to do or not to do a specific thing, which was his duty to do or not to do?

"In Territory ex rel. Smith v. Scot et al., 20 N. W. 401, the question of the Legislature delegating its ap-

pointive power to others was squarely raised. The court said:

" 'The act of the Territorial Legislature passed March 8, 1883, removed the seat of the government of the Territory from Yankton and authorized certain persons therein named as commissioners to select some other city as the capital and locate the seat of goverment at the place so selected, is not in conflict with the organic act of the Territory, in that it delegates to such commissioners a duty that could only be lawfully performed by the Governor and the legislative assembly; nor in that it appoints and designates such commissioners instead of leaving their appointment to the Governor, by and with the advice and consent of the legislative council, upon his nomination, and such commissioners are lawfully entitled to exercise the duties and powers conferred upon them by such act.'

"In the case of Waterman v. Freeman, 80 Calif. 233, 22 Pac. 173, the Constitution of California is construed, which reads as follows:

" 'All officers or commissioners whose election or appointment is not provided for by this Constitution and all officers or commissioners whose offices or duties may hereafter be created by law shall be elected by the people or appointed as the Legislature may direct.'

"This language is so strikingly like the provisions in section 1857 of the Compiled Laws, supra, that a construction of the California Constitution would certainly be of great assistance and throw considerable light upon the construction of said section 1857. The office under consideration in this case was one created by statute and it was filled by the Legislature acting directly, without having passed any general law or any other provision other than simply the assembly appointing the officer. A comparison of the two provisions are so strikingly similar that if the legislative assembly of California could fill an office under that provision, then certainly, by the same course of reasoning, the Terri-

torial assembly could fill such offices as contemplated by said section 1857. In other words, they maintained, as well as many other authorities, and certainly it is the opinion of the court in this case that the power to create an office implies the power to fill such office. It would be folly to grant the power to create with no means provided for the filling of such offices. It is true there is no expressed power granted by Congress to the Territory to fill vacancies in office. But cer-. tainly we have a right to assume that no one will contend but what there is a power somewhere to fill vacancies in an office that has been created by the legislative power of the Territory and the office once legally filled. It must be conceded that all power we have in the Territory to create county offices and to provide the manner in which such offices shall be filled, either by appointment or by election, is embodied in the one section of the act of Congress, section 1857, supra. Therefore, the legislative power must provide first the office and then the officer, through an election or appointment in the manner provided by the Legislature. All the authority the Territory has conferred upon it to fill vacancies in office is implied in the general power given the legislative power as contained in said section 1857. Therefore the legislative power is authorized to fill vacancies. The manner of filling them is left to the Legislature to provide. And if it can provide a manner, such manner may be by direct appointment, it may be conferred upon the people to elect, it may be conferred upon the Governor to appoint or it may be conferred upon county commissioners to appoint as in this case.

"It is contended by the learned counsel representing the solicitor-general, that chapter 2 of the Laws of New Mexico of 1901, precludes the Legislature from filling vacancies, either by direct appointment or by appointing a commission to fill vacancies in county offices. It will be observed that said provision provides that the Governor shall appoint when a vacancy shall

occur 'by reason of death, resignation or otherwise.'
The vacancy in the office of assessor of Bernalillo county
was not caused by death, nor resignation. How about
the term 'otherwise?' Does that include a vacancy
caused by legislative removal, is it to be taken in its
broad sense so as to include any and all vacancies not
caused.by death or resignation? We might inquire why
the legislative power delegated to the Governor the au-
thority to fill vacancies at all. Certainly the Legisla-
ture would not have delegated such power had there
been a vacancy occurring while the Legislature was in
session. The session of the Legislature being limited
by law to sixty days, that leaves the balance of two
years in which no vacancy could be filled unless such
power to fill had been delegated to some person or per-
sons. If no provision had been made by the legislative
power to fill vacancies, could they have been filled? Yes,
by the legislative power and by it only. If the Legisla-
ture intended that any vacancy that might occur shall
be filled by appointment by the Governor, why should
it specifically point out vacancies caused by death or
resignation? It would be a serious charge against the
legislative intelligence that it meant any vacancy that
might occur shall be filled by appointment by the Gov-
ernor after employing the language they did. If the
word 'otherwise' is to be construed to mean any vacancy,
then the words 'by reason of death or resignation' were
surplusage and must stand for naught, because they are
included in the words 'any vacancy.' We believe it to
be a universal rule of construction that when general
words follow particular and specific words, the general
words are confined in meaning to the things of like kind
and nature designated by the specific words. Suther-
land on Stat. Con., sec. 286; Jenson v. State, 19 N. W.
378 (Wis.); State v. Dennison, 82 N. W. 385 (Neb.);
Roberts v. Jackson, 4 Yerg. (Tenn.) 322; State v. Wood
County, 72 Wis. 637.

"In each of these cases, the word 'otherwise' fol-

lowed specific terms and was construed to mean other things of like kind and nature. In the case of State v. Wood, supra, the Wisconsin statute provided, referring to county road tax, 'which shall be expended under their (county board) direction, in making culverts, grading, graveling, ditching or otherwise improving such highways.'

"The Court said:

" 'By a familiar rule of construction, the words "or otherwise improving such highways," must be held to mean the improvement of such highways by making culverts, grading, graveling, ditching or other improvements of a similar character, and not to the building of a bridge.'

"In Jensen v. State, supra, the statute provided, 'If any tavern keeper, or other person, shall sell, give away or barter any intoxicating liquors,' etc. The court construed the words 'other person' to mean not anybody and everybody, but following the words 'tavern keeper,' 'indicate very clearly the class of persons against whom the act was aimed and the general words "other persons" must under the familiar rule *noscitur a sociis* to be taken to mean a similar class of persons and not to be extended so as to include all persons.' And the court cites a long list of authorities in support of their construction.

"In the Nebraska case, the law provided, 'If any person shall open or establish, as owner or otherwise, any lottery or game of chance in this State,' etc. In construing the term 'otherwise' as used in this connection, following the word 'owner,' it was restricted to the meaning of 'owner' or some one in similar or like capacity.

"We do not hesitate to say that wherever the word otherwise is used, following specific terms, that no authority can be found that will give it its broad significance when used by itself, but that they restrict it to the meaning of the specific words and terms preceding

it. Apply that rule of construction to the said chapter 2 and what is the meaning of the word 'otherwise' following the words 'whenever any vacancy shall occur by reason of death, resignation or otherwise,' and you will have the word otherwise's meaning, a vacancy caused by death or resignation, or vacancies caused in a similar manner; possibly instead of death, dementia; for example, instead of resignation, a man picks up and hies to other countries; he has not resigned; he has not been removed, but he has quit and it is of similar kind and character as resignation. And again, by implication, at least, the Legislature has interpreted said chapter 2 by enacting section 1 of chapter 49. A legislative interpretation of a statute is not binding upon a court but should have great weight. Jackson v. Board of Supervisors, 34 Neb. 680; Constant v. People, 6 Wendall 511.

"I am, therefore, of the opinion that the act of the Legislature, viz., section 3 of chapter 27, and section 1 of chapter 49, is legal and that the Legislature acted within its scope and power.

"The other question raised by the demurrer, to-wit, whether or not Sandoval's non-residence of the present Territory of the county of Bernalillo makes him ineligible to be reinstated as assessor of Bernalillo county, is not necessary for me to pass upon in this action, for the reason heretofore given as to the legality of the statute passed by the last Legislature.

"For the reasons hereinbefore given, the demurrer is overruled and should the solicitor-general stand upon his demurrer, the information will be dismissed.

"By the court.

"BENJ. S. BAKER, Judge."