58 So.2d 173 (1952)
THOMAS
v.
STATE ex rel. COBB et al.
Supreme Court of Florida, en Banc.
March 28, 1952.
Rehearing Denied April 30, 1952.
Keen, O'Kelley & Spitz, J. Velma Keen and Chas. H. Spitz, Tallahassee, for appellant.
Bedell & Bedell and Chester Bedell, Jacksonville, for appellees.
MATHEWS, Justice.
The relator is a citizen and resident of Duval County, Florida, and is now and has been for many years a qualified elector of Duval County. He is not illiterate, but graduated from the University of Georgia in 1929 with a degree of Bachelor of Science in Civil Engineering, and holds a degree of Master of Arts from the University of Florida awarded to him in 1941.
On February 1, 1952, the relator attempted to qualify as a candidate for the office of Superintendent of Public Instruction of Duval County and complied with all of the requirements of law to that end, except the payment of a filing fee which was refused by the respondent on the ground that relator did not also file a valid Florida Graduate Certificate as required by Section 230.25, F.S.A., which is a part of the School Code.
This appeal is from a final judgment in a mandamus proceeding holding invalid and ineffective the provisions of Section 230.25, F.S.A., and related sections which require candidates for this office to hold a valid Florida Graduate Teacher's Certificate.
The relator in the Court below urged that the provisions of Section 230.25, F.S.A., *174 upon which the Clerk's refusal was based and related sections are invalid and ineffective because:
"(1) The office of County Superintendent of Public Instruction is a constitutional office provided for by Article VIII, Section 6, of the Constitution of Florida and the Legislature is without power to prescribe educational qualifications, such as are attempted to be prescribed by Section 230.25 as a condition to election to that office.
"(2) Even if it should be assumed that the Legislature has power to prescribe reasonable educational qualifications as a condition to election to the office of County Superintendent of Public Instruction, the provisions of Section 230.25 and related sections of the Florida School Code constitute an unlawful delegation of legislative power to the State Department of Education and the State Board of Health."
Other questions were raised which, from the conclusion we have reached, it will be unnecessary to consider.
The Circuit Judge in his order overruling the motion to quash said:
"Having heard the argument of counsel, examined the briefs and carefully considered all of the same, this Court is of the opinion that by the provisions of Section 230.25 Florida Statutes of 1951 [F.S.A.], and related sections, especially sections 231.17, 231.20, and 231.24, the Legislature clearly attempted and purported to delegate to the State Department of Education and the State Board of Health discretionary power to prescribe the academic, professional, physical and mental requirements necessary to render a person eligible to obtain a Florida graduate certificate, and to delegate to those bodies power to declare what the law should be as to the qualifications of candidates for and holders of the office of Superintendent of Public Instruction, and to delegate to said bodies the power to enact laws in this regard, which powers are vested in the Legislature alone by the Constitution. Therefore, the Court is constrained to hold, `and does now hold, that the provisions of said Section 230.25 and related sections, upon which the Respondent Clerk's refusal to accept relator's qualifications as a candidate is based, are invalid and ineffective.'"
The respondents declined to answer and thereupon a final judgment awarding peremptory writ of mandamus was entered. This appeal is prosecuted from that final judgment.
We are confronted with important Constitutional questions. The Constitution is the charter of our liberties. It cannot be changed, modified or amended by legislative or judicial fiat. It provides within itself the only method for its amendment. It requires the affirmative vote of a prescribed percentage of the membership of each branch of the Legislature, and then a submission to the qualified electors of the state before an amendement can be effected.
We have presented to us another example where particular constitutional provisions have not been amended in the manner provided by the Constitution to keep pace with changing conditions in a progressive and growing state. We can only construe the Constitution as it is and not as we might like it to be. Every provision of it was inserted with a definite purpose and all sections and provisions of it must be construed together, that is, in pari materia, in order to determine its meaning, effect, restraints, and prohibitions. In the case of Amos v. Mathews, 99 Fla. 1, 126 So. 308, 316, the Court said:
"The purpose of the people in adopting the Constitution should be deduced from the Constitution as an entirety. Therefore, in construing and applying provisions of the Constitution, such provisions should be considered, not separately, but in co-ordination with all other provisions. Mugge v. Warnell [Lumber & Veneer] Co., 58 Fla. 318, 50 So. 645; Ex parte Pricha, 70 Fla. 265, 70 So. 406; Brown v. [City of] Lakeland, 61 Fla. 508, 54 So. 716."
*175 This case involves one important question and that is: Has the Legislature under our present Constitution the power to prescribe the qualifications for the constitutional office of County Superintendent of Public Instruction? This office is provided for by Section 6 of Article VIII and is not provided for in Article XII of the Constitution, F.S.A., which declares the public policy of the State with reference to the free public school system. Section 1 of Article XII provides: "The Legislature shall provide for a uniform system of public free schools and shall provide for the liberal maintenance of the same."
By no stretch of the imagination can it be said that Section 1 of Article XII above quoted authorizes the Legislature to prescribe the qualifications for the office of County Superintendent of Public Instruction.
Prior to the amendment of Section 9 of Article XII at the general election in 1926, Section 1 could not be given full force and effect as to the liberal maintenance of this "uniform system of public free schools". Prior to that time the Legislature was limited by the Constitution in making appropriations for the public schools to the one mill ad valorem tax levy, interest upon the sacred state school fund, and the proceeds from the capitation tax. In 1926 Section 9 was amended so as to authorize the Legislature in addition to the funds above mentioned to make other appropriations without limit or restriction. Prior to the adoption of this amendment the total appropriation by the state for the support of the uniform system of free public schools amounted to approximately one-half million dollars per year. Since that time rapid strides have been made in carrying out the constitutional mandate to provide for the liberal maintenance of this system. At the last session of the Legislature more than fifty million dollars per annum was appropriated from state funds to provide for free public schools and the liberal maintenance of the same. In addition to this state appropriation, more than fifty million dollars per annum is being provided by the counties and districts of the state from local taxes.
The free public school system required by the Constitution of Florida and the Constitutions of other states is the "cornerstone of our civilization" and the very future of our form of government may well depend upon wholehearted support and liberal maintenance for that system.
It may be desirable to have certain educational, physical, mental, and moral qualifications definitely prescribed for those persons who desire to hold the office of County Superintendent of Public Instruction. Such qualifications very likely would increase the efficiency of the system. We must bear in mind, however, that County Superintendent of Public Instruction is not merely an employee. He is an officer, holding a constitutional office and if the qualifications for this office prescribed by the Legislature, or by some Board, as attempted to be authorized by the Legislature, conflict with the State Constitution, the Statutes, rules or regulations prescribing such qualifications must be declared to be invalid and ineffective as to such constitutional office.
Under our system and form of Government the Constitution makes ample provision for free elections and the qualifications of electors. Section 1 of Article VI, as limited by Section 4 of Article VI, prescribes the qualifications of electors, and this court, in State ex rel. Landis v. County Board of Public Instruction of Hillsborough County, 137 Fla. 244, 188 So. 88, and Riley v. Holmer, 100 Fla. 938, 131 So. 330, has held that the Legislature cannot place restrictions on the qualifications of electors that will prohibit those qualified under constitutional provisions to vote in elections authorized by the Constitution. The Legislature is powerless to enact legislation modifying qualifications for suffrage prescribed in the Constitution. As will be demonstrated hereafter, since our Constitution has declared for free elections each elector is entitled to cast his vote for any eligible person for any office provided by the Constitution free from any restraint not authorized by the Constitution itself. This is the very *176 essence of our system and form of government and of free elections.
Section 2 of the Bill of Rights provides "All political power is inherent in the people."
The 10th amendment to the Constitution of the United States provides that all powers not delegated to the United States by this Constitution nor prohibited to it by this State, are reserved to the States respectively, or to the people.
Section 26 of Article III of the Constitution provides as follows:
"Laws shall be passed regulating elections, and prohibiting under adequate penalties, all undue influence thereon from power, bribery, tumult or other improper practice."
Section 6 of Article VI of the Constitution provides:
"In all elections by the Legislature, the vote shall be viva voce, and in all elections by the people, the vote shall be by ballot."
Section 9 of Article VI of the Constitution provides:
"The Legislature shall enact such laws as will preserve the purity of the ballot given under this Constitution."
Section 6 of Article VIII of the Florida Constitution provides for the election by the qualified electors in each county of county officers, including that of "a Superintendent of Public Instruction". Said section, among other things, provides as follows:
"The Legislature shall provide for the election by the qualified electors in each county of the following County Officers: A Clerk of the Circuit Court, a Sheriff, Constables, a County Assessor of Taxes, a Tax Collector, a Superintendent of Public Instruction and a County Surveyor."
Section 230.25, Florida Statutes, provides as follows:
"Qualifications of county superintendent.
"In order to be eligible for nomination, election or appointment to the office of county superintendent in any county in Florida, in addition to meeting requirements now prescribed by law for candidacy for public office, a person shall hold a valid Florida graduate certificate based upon graduation from a four-year course in a standard institution of higher learning; * * *
Before any person may become a candidate for or have his name placed on the ballot for nomination or election to the office of county superintendent he shall, within the time prescribed by law for filing other credentials, file said certificate with the clerk of the circuit court in his capacity as clerk of the board of county commissioners of the county in which he proposes to become a candidate." (Italics supplied.)
In order to ascertain the meaning of a "valid Florida Graduate Certificate based upon graduation from any four-year course in a standard institution of higher learning" we must first examine other sections of the School Code and particularly Sections 231.17, 231.20 and 231.24, which attempt to delegate to the State Board of Education, or the State Board of Health, unlimited and discretionary power to prescribe academic, professional, physical and mental requirements as prerequisites to eligibility to obtain the certificate required by Section 230.25, F.S.A.
In order to ascertain the meaning and purpose of Sec. 6, Article VIII of the Constitution as it relates to the power of the Legislature to prescribe qualifications for the office of County Superintendent of Public Instruction, it is necessary that we consider other important provisions of the Constitution.
Section 4 of Article III provides that the Senators and Members of the House of Representatives shall be "duly qualified electors in the respective counties and districts for which they were chosen."
Section 8 of Article III provides that the seat of a Member of either House shall be vacated on a permanent change of residence from the district or county from which he was elected.
Section 7 of Article III prohibits any person who holds a lucrative office or appointment under the United States or of *177 this State from being a Member of the Legislature.
Section 3 of Article IV prohibits any person from holding the office of Governor who is not a qualified elector and who has not been 10 years a citizen of the United States and 5 years a citizen and resident of Florida.
Section 3 of Article V prohibits any person being appointed or elected as a Justice of the Supreme Court, or Judge of the Circuit or Criminal Courts that is not 25 years of age and an attorney at law.
We find no such Constitutional prohibitions or qualifications as those set forth above relating to offices of Governor, Members of the Legislature and Judges, attached to the office of County Superintendent of Public Instruction.
Section 5 of Article VI relates to the qualifications of all officers and is the only section of organic law that does so relate to all officers. This section reads as follows:
"The Legislature shall have power to, and shall, enact the necessary laws to exclude from every office of honor, power, trust or profit, civil or military, with in the State, and from the right of suffrage, all persons convicted of bribery, perjury, larceny or of infamous crime, or who shall make, or become directly or indirectly interested in, any bet or wager, the result of which shall depend upon any election; or that shall hereafter fight a duel or send or accept a challenge to fight, or that shall be second to either party, or that shall be the bearer of such challenge or acceptance; but the legal disability shall not accrue until after trial and conviction by due form of law."
Section 15 of Article XVI of the Constitution reads as follows:
"No person holding or exercising the functions of any office under any foreign Government, under the Government of the United States, or under any other State, shall hold any office of honor or profit under the government of this State; and no person shall hold, or perform the functions of, more than one office under the government of this State at the same time; Provided, Notaries Public, militia officers, county school officers and Commissioners of deeds may be elected or appointed to fill any legislative, executive or judicial office." (Emphasis supplied.)
It should be especially noted that Section 15 of Article XVI exempts county school officers, which includes the office of "County Superintendent of Public Instruction." In other words, County School officers were not considered to be so essentially identified with any particular branch of the government that they could not hold more than one office whether legislative, executive or judicial.
In a very recent amendment to the Constitution, Section 50, Article V, vested in the Legislature the power to create and establish Juvenile Courts and specifically vested the power in the Legislature "to provide for the qualifications, election, or selection and appointment of judges, probation officers * * *." (Emphasis supplied.) It is plain that the Legislature, in proposing this amendment to the people, was aware of the fact that in order for the Legislature ever to have the power to prescribe the qualifications for such officers it was necessary to insert such a provision in the proposed Constitutional amendment. This is so because of the restrictions and limitations with respect to legislative power contained in other Sections of the Constitution.
We are not unmindful of the fact that under our State Constitution it is not necessary that the Constitution contain specific grants of power to the Legislature; that the Constitution is a limitation upon power rather than a grant of power. For example, had there been absolutely nothing in the Constitution with reference to the payment of the salaries of county officers, the Legislature would have been all-powerful in respect to this subject; but when the Constitution made specific provisions with reference to this matter, it amounted in effect to a prohibition in the exercise of the power in any other way. This is made clear in the case of State ex rel. Murphy v. *178 Barnes, 24 Fla. 29, 3 So. 433, wherein it is said, on page 434 of the text:
"The suggestion that this section contains nothing to prohibit the legislature from passing a law putting the payment of the salaries of county officers on the state is quite untenable. When a constitution directs how a thing shall be done, that is in effect a prohibition to its being done in any other way."
In the case of State ex rel. Church v. Yeats, 74 Fla. 509, 77 So. 262, 263, this Court said:
"The second contention is that chapter 7290 violates article 19 of the Constitution of this state. `Courts may inquire only into the power of the Legislature to lawfully enact a particular statute, and all doubt as to its constitutionality are resolved in favor of the statute.' Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. 282. It does not follow, however, that in every case the courts, before they can set aside a law as invalid, must be able to find in the Constitution some specific inhibition which has been disregarded or some express command which has been disobeyed. Cooley's Const.Lim. (7th Ed.) 242. Says the court in Sill v. [Village of] Corning, 15 N.Y. 297, text 303, quoted in Cooley's Constitutional Limitations, p. 242:
"`The law-making power of the state, it is said in one case, recognized no restraints, and is bound by none, except such as are imposed by the Constitution. That instrument has been amply termed a legislative act by the people themselves in their sovereign capacity, and is therefore the paramount law. Its object is not to grant legislative power, but to confine and restrain it. Without the constitutional limitations, the power to make laws would be absolute. These limitations are created and imposed by express words or arise by necessary implication.'
* * * * * *
"When the Constitution prescribes the manner in which a thing shall be done or a fact ascertained by implication, it prohibits the Legislature from by statute providing a different manner  the one prescribed in the Constitution is exclusive of all other modes."
In the case of State ex rel. Davis v. Love, 99 Fla. 333, 126 So. 374, there was involved the constitutionality of Chapter 9312, Laws of Florida, 1923, which attempted to authorize the maintenance of suits against the State Road Department on claims of a certain character. Section 22 of Article III of the Constitution vested in the Legislature the power by general law to authorize suits to be brought against the State. This court in State ex rel. Davis v. Love, supra, on page 380 of 126 So. of the text said:
"This constitutional provision prescribes the method by which the power may be exercised, and we have frequently held that, when the Constitution prescribes a method by which any act may be accomplished, that method is exclusive. So the Legislature of this state may not consent to the state being sued in any other manner than that prescribed by the Constitution. Hampton v. State Board of Education, 90 Fla. 88, 105 So. 323, 42 A.L.R. 1456."
In the case of Amos v. Mathews, supra, on page 316 of 126 So. of the text the court said:
"* * * in Re Advisory Opinion to Governor, 94 Fla. 967, 114 So. 850, 855, this court said that `the spirit as well as the letter' of constitutional inhibitions `should be preserved and given full force and effect.' Constitutional restraints, therefore, may be found either in the express language employed or in the purpose clearly, though impliedly, evidenced thereby. The object of constitutional construction is to ascertain and effectuate the intention and purpose of the people in adopting it. That intention and purpose is the `spirit' of the Constitution  as obligatory as its written word. That spirit, however, cannot consist of mere sophistry nor of fanciful or conjectural theory. It must be found in those implications and intendments which clearly flow from the express mandates *179 of the Constitution when considered in the light of circumstances and historical events leading up to its adoption, from all of which the purpose of the people in adopting it is to be gleaned."
The principle above set forth was reaffirmed in the case of State ex rel. Ellars v. Board of County Commissioners of Orange County, 147 Fla. 278, 3 So.2d 360. On page 362 of 3 So.2d of the text in this case the Court said:
"In Weinberger v. Board of Public Instruction of St. Johns County, 93 Fla. 470, 112 So. 253, 256, we said:
"`The principle is well established that where the Constitution expressly provides the manner of doing a thing, it impliedly forbids its being done in a substantially different manner. Even though the Constitution does not in terms prohibit the doing of a thing in another manner, the fact that it has prescribed the manner in which the thing shall be done is itself a prohibition against a different manner of doing it. Holland v. State, 15 Fla. 455, text 523. See, also, Grantham v. Board of Public Instruction, 77 Fla. 540, 82 So. 52. Therefore, when the Constitution prescribes the manner of doing an act, the manner prescribed is exclusive, and it is beyond the power of the Legislature to enact a statute that would defeat the purpose of the constitutional provision. State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 So. 433; State ex rel. Church v. Yeats, 74 Fla. 509, 77 So. 262; Leonard v. Franklin, 84 Fla. 402, 93 So. 688. See, also, Cooley's Const.Lim. (7th Ed.), p. 114, Coleman v. Town of Eutaw, 157 Ala. 327, 47 So. 703; Bryan v. Sundberg, 5 Tex. 418; District Township [of city of Dubuque] v. [city of] Dubuque, 7 Iowa 262. "Every word of a State Constitution should be given its intended meaning and effect, and essential provisions of a Constitution are to be regarded as mandatory." Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, Ann.Cas. 1914B, 916. See, also, 12 C.J. 707, 740; 19 Cyc. 23.'"
The respondents rely upon the case of State ex rel. Landis v. Ward, 117 Fla. 585, 158 So. 273, which concerned the qualifications of a person to hold the county office of "county surveyor", as provided in Section 6 of Article VIII. Appellant strongly urges that the law applicable to a "county surveyor" is also applicable to a "County Superintendent of Public Instruction". The word "surveyor" had at the time of the adoption of the Constitution and still has a very definite and technical meaning. A person may be a surveyor for the United States Government, or for the Everglades Drainage District, or for a particular county, but he must first be a surveyor before he can be named a State Surveyor or a United States Government Surveyor, or a County Surveyor, etc. In that case on page 275 of 158 So. of the text the Court said:
"The office of county surveyor is one that from its inherent nature is an office capable of being filled only by some person elected or appointed to hold it who is qualified in a practical or professional way as a practitioner of surveying. For such office it is true that the Constitution is silent as to any particular constitutional requirement of eligibility and personal fitness of the person who may be elected to fill it, but, the office being one of a technical character, it is necessarily implied that the holder of it shall be competent under the law to personally perform the acts that must be done by an incumbent of it in order to enable him to discharge the official duties that the law requires shall be discharged by a county surveyor.
"Surveying is the operation of finding and delineating the contour, dimensions, position, topography, etc., as of any part of the earth's surface, whether land or water, by the preparation of a measured plan or description of any area or other portion of the country, or of a road or line through it. It is that branch of applied mathematics which teaches the art of determining the area or boundaries of any portion of the earth's surface, the lengths and directions of the boundary lines, and *180 the contour of the land. And a `surveyor' necessarily is one who is qualified to ascertain and does ascertain the facts necessary to a correct survey, or who by reason of practical experience in regard to such matters is able to perform the duties necessary to the ascertainment of the facts essential to a correct survey. Severance v. Ball, 93 Cal. App. 56, 268 P. 1068.
"The effect of chapter 15657, Acts of 1931, supra, is to set up certain professional standards that must be possessed by every person who practices the professional art of surveying in this state. Section 9 of the act makes it applicable to those who hold the constitutional office of county surveyor and practice surveying in that capacity, as well as those who practice surveying in a private professional capacity.
"The effect of the statute is to operate directly upon the person of the practitioner by making it unlawful for such person to practice land surveying in this state after January 1, 1932, who is not a duly and regularily registered land surveyor, with certain exceptions. To give effect to this statute by applying it against the personal right of the respondent in this case to practice land surveying is to deny him the right, as an unregistered surveyor, to do any act of land surveying. That it may be made to operate against respondent personally in so far as his personal qualifications to practice land surveying is concerned is undoubtedly a proper exercise of the police power of the state to set up standards and regulate the practice of arts and professions of a public character.
"We therefore have in this case a situation where the office of county surveyor is being filled by an incumbent who is personally disqualified to do any of the * * * professional services that would have to be rendered by him if the office of county surveyor which he holds is to subserve any part of the purpose of its existence. In this respect the respondent is as much personally rendered unable to perform the duties of the office which he now holds as would be a county attorney who had never been admitted as a practitioner of law in the Florida courts, or who, having been once admitted, has since lost through disbarment his status as a licensed attorney at law."
Section 17 of Article XVI of the Florida Constitution provides:
"No person shall hold any office of trust or profit under the laws of this State without devoting his personal attention to the duties of the same."
A man who was not a surveyor, or, if he was, had not complied with reasonable police regulations with reference to the practice of his profession and could not devote his personal attention to the duties of his office was not qualified to hold the office of County Surveyor. The same is true with reference to a Justice of the Supreme Court, Circuit Court Judge, or Judges of Criminal Courts, because the Constitution specifically requires as a qualification that such an officer shall be an attorney, and that he shall devote his personal attention to the duties of the office. In order to be an attorney and thus qualified to hold the office of Justice or Judge, the aspirant must have complied with the reasonable police regulations of the state and have obtained a proper certificate certifying that he was an attorney and was qualified to practice his profession.
We have no Constitutional requirement that the Superintendent of Public Instruction must possess any particular professional qualifications such as is the requirement in respect to a County Surveyor that he must be a surveyor, or as is required of a Justice or a Judge that he must first be an attorney.
At the time of the adoption of the Constitution, there was no particular definition of the phrase "Superintendent of Public Instruction". These words had no technical meaning in 1885, and from the time of the adoption of the Constitution, until the enactment of the challenged Statutes in 1947, there had never been any attempt to specify the qualifications that a person should possess in order to be eligible for nomination *181 or election, or before he could lawfully hold the office of Superintendent of Public Instruction. It is elementary that notes and records of a Constitutional Convention are exceedingly material in construing the provisions of a Constitution adopted at such a convention. The question respecting the qualifications of Constitutional officers was considered and discussed in the case of State ex rel. Attorney General v. George, 23 Fla. 585, 3 So. 81, 82, by a Court composed of Justices who were associates and contemporaries of those who wrote the Constitution. In the opinion the Court said:
"The constitution prescribes no qualifications for office, except for governor, senators, and members of the house of representatives, and judges of the supreme and circuit courts; and, as to these, only the governor, senators, and members are required to be qualified electors. It is silent as to the qualifications of all other officers. We do not infer from this that the framers of the constitution were unmindful of the importance of having only such persons put into office as would be endowed with suitable qualifications. Our inference rather is that they deemed it best to leave that without rigid restriction trusting that those who were to have the selection of officers would take care that none but fit persons should be selected or appointed,  fit, not only in respect to capacity and character, but also in having citizenship to identify them in interest with the communities in which their official duties were to be performed. * * *
"We are satisfied from the history of the convention which framed our present constitution in 1885 that the absence of qualifications for officers other than as above mentioned, either for the reason given, or some other, was intentional. The convention was called `for the purpose of making an entire revision of the constitution' of 1868. Acts of 1885 c. 3577, § 1. The proceedings of the convention show that the work of that body was made to conform to the idea of `revision.' In appointing committees, they were designated by names corresponding to the 17 articles of the constitution to be revised, accompanied by this resolution: `That the functions of these committees shall be to revise the constitution in such matters as are indicated by their [respective] titles, and to consider and report on all matters referred to them.' Con.Jour. § 1 [p. 31]. One of these was a `Committee on Miscellaneous Provisions;' and by reference to section 22, under that title in the constitution of 1868, this provision will be found: `No person shall be eligible to any office unless he be a registered voter.' But this does not appear under that title, or any other, in the new constitution. Considering that the matter was expressly before the committee, that this provision was dropped, and that the convention acquiesced in so doing, the conclusion is hardly to be resisted that it was dropped purposely, and, if so, that the intention must have been not to restrict the election of officers to persons having the full qualifications of a registered voter. Those qualifications as to the length of residence are the same in both constitutions; and retaining them for voters and not for officers indicates that, in the view of the convention, when officers were to be elected, the provision for duly qualified electors would furnish sufficient safeguard against the choice of unsuitable persons." (Emphasis supplied.)
From this discussion it is clearly apparent that the framers of the Constitution were of the settled view that where the Constitution prescribed definite qualifications for some offices and no qualifications for others, the provision in the Constitution "for duly qualified electors would furnish sufficient safeguard against the choice of unsuitable persons". (Emphasis supplied.)
The author in the article on Public Officers, 42 Am.Jur., Sec. 38, p. 909, states:
"The better opinion appears to be that a regulation on the subject inserted in the Constitution operates as an implied restriction on the power of the *182 Legislature to impose additional or different qualifications."
One of the best reasoned cases on this subject is that of People ex rel. Hoyne v. McCormick, 261 Ill. 413, 103 N.E. 1053, 1056, Ann.Cas. 1915A, 338. In this case the Court said:
"Where the Constitution declares the qualifications for office, it is not within the power of the Legislature to change or add to them, unless the Constitution gives that power. `It would seem but fair reasoning, upon the plainest principles of interpretation, that when the Constitution established certain qualifications as necessary for office it meant to exclude all others as prerequisites. From the very nature of such a provision the affirmance of these qualifications would seem to imply a negative of all others. * * * A power to add new qualifications is certainly equivalent to the power to vary them.'
* * * * * *
"Since the Constitution has declared that all elections shall be free, each elector is entitled to cast his vote for any eligible person for any office provided for by the Constitution, free from any restraint not authorized by the Constitution itself. The Legislature may determine the manner of conducting elections, and the means of ascertaining and declaring the result, but it has no right to interfere with the freedom of choice, which is the meaning of freedom of election. It is essential to the freedom of elections mentioned in the Constitution that every voter shall be permitted to choose from all eligible persons, and shall not be required to choose from certain classes.
* * * * * *
"It may be true that many persons having the constitutional qualifications are wholly unfit to discharge the duties of many offices within the state, but if the Legislature possesses the power to vary the constitutional qualifications for office by adding new requirements or imposing additional limitations, then eligibility to office and freedom of elections depend, not upon constitutional guaranties, but upon legislative forbearance. If the Legislature may alter the constitutional requirements, its power is unlimited, and only such persons may be elected to office as the Legislature may permit. In our judgment, when the Constitution undertakes to prescribe qualifications for office, its declaration is conclusive of the whole matter, whether in affirmative or in negative form. Eligibility to office belongs to all persons. In our Constitution no other form of stating eligibility to office is found than the declaration that no person shall be eligible who does not possess certain qualifications. The Constitution of the United States is in the same form in this particular, and so are the constitutions of other states. The expression of the disabilities specified excludes others. The declaration in the Constitution that certain persons are not eligible to office implies that all other persons are eligible."
In the case of Wynn v. State ex rel. District Attorney, 67 Miss. 312, 7 So. 353, 355, the Court said:
"From the provision (of the Constitution), `no person shall be eligible to any office * * * who is not a qualified elector,' the implication is very strong that a qualified elector shall be eligible to any office, unless otherwise provided; and, in view of the fact that it is otherwise provided as to certain offices, the implication becomes a necessary one, and decisive against the claim of power in the legislature to add to the constitutional qualifications for office."
In the case of Quenstedt v. Wilson, 173 Md. 11, 194 A. 354, 358, the Court said:
"`where, as in this state, the Constitution has declared so unequivocally the conditions essential to the eligibility to some offices, and has stated with equal precision other conditions which will render a person ineligible for any office created by it, it may be assumed that when it failed to prescribe any special qualifications as essential to eligibility *183 to constitutional offices, it did not intend any.'"
Our State Constitution, as we have pointed out, prescribes in no uncertain terms that certain persons are disqualified to hold certain constitutional offices, such as, Governor, Members of the Legislature, Justices of the Supreme Court, Judges of the Circuit and Criminal Courts. As to all officers the Constitution further excludes from office all persons "convicted of bribery, perjury, larceny or of infamous crime, or who shall make, or become directly or indirectly interested in, any bet or wager, the result of which shall depend upon any election; or that shall hereafter fight a duel or send or accept a challenge to fight, or that shall be second to either party, or that shall be the bearer of such challenge or acceptance; but the legal disability shall not accrue until after trial and conviction by due form of law." This solemn declaration in our Constitution about qualifications or disqualifications to hold public office are conclusive of the whole matter whether in the affirmative or in the negative form.
These plain and unambiguous specifications of disabilities exclude all others unless the Constitution provides otherwise. The effect of this declaration in the Constitution that certain officers are not qualified carries with it the necessary implication that all others are qualified.
We have carefully considered this cause and all of the provisions of the Constitution relating to it and have come to the following very definite conclusions and we so hold:
(1) The office of Superintendent of Public Instruction is a county office created by Section 6 of Article VIII of the Constitution of the State of Florida.
(2) The Legislature is prohibited from adding to or taking from the qualifications of the Superintendent of Public Instruction so as to make the same different from those prescribed in the Constitution.
(3) Section 230.25, F.S.A., is invalid and ineffective because it prescribes qualifications for the office of Superintendent of Public Instruction in addition to those prescribed by the Constitution.
(4) The Legislature, not having the power or authority to prescribe these additional qualifications for this office, had no authority to delegate to any board, or boards, the authority to prescribe additional qualifications and Sections 231.17, 231.20 and 231.24 are invalid and ineffective insofar as they relate to the office of County Superintendent of Public Instruction.
What we have said is in respect to constitutional offices, with particular reference to the office of County Superintendent of Public Instruction. We express no opinion as to employees or offices that may be created by the Legislature. Different rules of law may apply with reference to statutory offices and employees.
This case has been ably presented in briefs and by oral arguments at the bar of the Court and the briefs and arguments have been of great assistance to the Court. There can be no question that many worthwhile measures concerning our public school system, qualifications of officers and other important matters need the careful attention and consideration of the people and the Legislature. No doubt there is still room for improvement in our government, but the improvement must come within the limits prescribed by the Constitution. In other governments we have witnessed usurpation of power beyond the limits of the Constitution and even the violent overthrow of Constitutional government. Disregard for the Constitution in order to accomplish some reform, or worthwhile purpose, can only lead to the ultimate destruction of Constitutional government.
It matters not how worthy the aim or noble the purpose, the Legislature cannot enact laws to accomplish such aims and purposes when such laws conflict with the plain expression, meaning, purpose and intent of the Constitution. As was said by General George Washington, 1st president of the U.S., in his farewell address to the Nation when he declined to be a third term candidacy:
"If, in the opinion of the people, the distribution or modification of the constitutional powers be in any particular wrong, let it be corrected by an amendment *184 in the way which the constitution designates. But let there be no change by usurpation; for, though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed. The precedent must always greatly over-balance in permanent evil any partial or transient benefit which the use may at any time yield."
Affirmed.
SEBRING, C.J., and THOMAS and HOBSON, JJ., concur.
TERRELL and CHAPMAN, JJ., concur in judgment.
GILLIS, Associate Justice, concurs in conclusion and judgment with a statement of his views.
TERRELL, J., concurring in the judgment.
It may be that Section 230.25 and related Sections of Florida Statutes 1951, F.S.A., particularly Sections 231.17, 231.20 and 231.24, transgress the allowable limit of legislative power, in that they delegate to the State Department of Education and the State Board of Public Health, discretionary power to prescribe academic, professional, physical and other requirements to qualify one to be an appointee or candidate for the office of County Superintendent of Public Instruction. Under our triparty system of government the dominent authority holds that such powers are legislative and cannot be delegated.
I do not agree with the general theory of the majority opinion that the legislature can require nothing more in the way of qualification for county superintendent of public instruction than that he be a qualified elector of a prescribed age and such others as are mentioned for county and state offices generally. I think it competent for the legislature to prescribe liberal educational, professional and other qualifications for those who contemplate being appointed or who expect to run for the office of County Superintendent of Public Instruction. There is no prohibition in the constitution against this, and being none, the way is open for the legislature to prescribe such qualifications.
Infinitely more is expected of the public school system of the present day than was expected when the constitution was adopted. A competent County Superintendent must not only have training as an educator and school man, he would be much better competent to fill the position with training in some aspects of business and other avenues of life that he will be confronted with. Trained leadership in a democracy is one of its first requirements and the County Superintendent is one of its key men. I cannot subscribe to a doctrine which holds that the legislature cannot require such qualifications of those who fill this position. This Court has many times interpreted the constitution so as to keep it abreast with current thought on vital questions.
I agree to the judgment of the majority opinion only for the reasons stated in the first paragraph of this opinion. I am authorized to say that Mr. Justice CHAPMAN concurs in this view.
CHAPMAN, J., concurs.
GILLIS, Associate Justice, concurring in judgment and conclusion.
I concur in the judgment and conclusion reached; because the power to determine the qualifications of County Superintendent of Public Instruction may not be delegated by the Legislature to administrative Boards or officers in the manner attempted.