RAWLS, Judge.
Appellees Treadwell and others instituted in chancery a class suit on behalf of the citizens, electors and freeholders of the Town of Oak Hill seeking reactivation of the town government. From a summary final decree in favor of the plaintiffs, appeal was taken by E. A. Smith whom the chancellor had permitted to intervene on behalf of the defendant Town.
The pertinent facts are not in dispute. The Town of Oak Hill was created by the legislature in 1925, and although the charter has never been nullified or abolished by the legislature, the Town government ceased to function in 1930. All of the last elected officials of the Town are now deceased, and under the provisions of the charter only these officials are authorized to call an election for the purpose of filling vacancies.
The chancellor in support of his summary final decree sustaining appellees’ position, made extensive findings of fact, salient ones for the purposes of this opinion being:
1. The Town of Oak Hill was first incorporated by special act of the legislature in the year 1925 and was reincorporated in the year 1927.
2. From the date of its second incorporation, the Town functioned by and through a duly qualified Board of Town Commissioners, and by subordinate officers.
3. The Board of Town Commissioners held the last meeting ever held by said commissioners on July 2, 1930.
4. Said Town after the second day of July, 1930, completely ceased to function in any respect whatsoever.
5. Chapter 13156, Sp. Laws of Florida, 1927, (sometimes termed “The Charter”) provides for the Board of Town Commissioners to fill by appointment a single vacancy on the Commission (if less than sixty days ensue before the next general election) and by election if more than sixty days ensue before such election, and always by election where more than one vacancy exists.
6. All the offices of the Board of Town Commissioners are vacant by reason of death; no one has been appointed nor has any election been called to fill such vacancies; and there is no person or persons in the Town of Oak Hill who is authorized to fill the vacancies now existing in said Town offices or who is authorized to call or hold an election.
7. The petitioners and all those persons residing in the said corporate limits of said Town of Oak Hill are without a municipal government and without any municipal authority to protect them in the peaceable and quiet enjoyment of their lives, their property and their rights as residents and citizens of said municipality.
8. The legislature granted perpetual existence to the Town of Oak Hill and said Town is a valid existing municipal corporation under the laws of the State of Florida.
9. The only authenticated record of the Town is a minute book of the meeting of the Town Commissioners which was introduced in evidence. No list of qualified electors and no authenticated ordinances of said Town were located.
10. There is no appointive power under the Constitution and Laws of the *51 State of Florida in the office of the Governor of said State for the filling of said vacancies; that under the Charter as well as the general laws of the State of Florida applicable to municipalities, substantial civil and political rights were conferred upon the Town as such and upon its citizens.
11. The civil rights so conferred by the Charter of Oak Hill are still in existence and the citizens living within the area of the Town as defined by its Charter, as a matter of law, are entitled to a municipal government at such time as they legally assert their desire for same. The people of Oak Hill have a right to the protection of their civil and political powers and privileges; it is, therefore, the duty of a Court of Equity to provide for holding an election.
The chancellor then appointed individuals, “as a Board of Election” who in turn were empowered to appoint an Acting Town Clerk to be the registration officer of said Town, provided for utilizing Chapter 9S by the Board, and further detailed the procedure for calling an election, including the giving of notice in the following formi
“NOTICE
“By decree of the Circuit Court of the Seventh Judicial Circuit of the State of Florida bearing date the 30th day of November, 1962, Notice is hereby given that a primary election shall and will be held in the Town of Oak Hill, Volusia County, Florida on the 15th day of January, 1963 or to-wit the first Tuesday after the second Monday in said month for the purpose of nominating candidates for the offices of Town Commissioner of said Town; that a regular election shall be held on the 12th day of February, 1963, being the first Tuesday after the second Monday in February of said year, for the purpose of electing such candidates as shall have been nominated at said' primary election; provided, however, that if not more than six candidates are nominated at the primary election, no primary election shall be held. The polls for said elections shall be open at the hour of 7:00 o’clock A. M., Eastern Standard Time, and shall close at 7:00 o’clock P. M. on said day, Eastern Standard Time. Said polling place shall be at Village Improvement Association Hall, East Halifax Avenue, Oak Hill, Florida, provided that in the event said polling place shall not be available on the day of said elections, then said elections shall be held at such polling place as shall be provided by the Board of Elections designated in said Decree of Court
“WITNESS my hand and seal at Deland, Volusia County, Florida, this 3rd day of December, 1962.
“(CIRCUIT COURT SEAL)
_s/ JESS MATHAS JESS MATHAS, Clerk of the Circuit Court, Volusia County, Florida.”
The chancellor further directed the Board of Elections to appoint Inspectors and a Clerk of Elections and bestowed upon the Board of Elections the same powers pertaining to the election called by him as if such appointees were duly elected members of the Town Commission of said Town.
The sole question for determination on this appeal is: Can a court in the absence of an authorizing charter provision call an election and appoint a Board of Elections to conduct same for the purpose of reactivating a municipality which possesses a valid charter although dormant for over thirty years?
*52 We find nothing in the statutes or Constitution which specifically authorizes a court of equity to call elections or otherwise reactivate a dormant municipality. On the contrary, the Constitution provides that the powers of the government of the State of Florida shall be divided into three departments: Legislative, Executive and Judicial; and no person properly belonging to one department shall exercise any powers appertaining to either of the others except in cases expressly provided for by this Constitution.[1] The legislature is granted the power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time.[2] Thus, we observe at the outset the elementary principle of constitutional law that a municipality is a creature of the legislature, and its beginning, duration, and end are each subject to the whims of the legislature. A citizen of the State of Florida possesses certain political rights which he has granted to himself by constitutional provisions, such as: the right to be a candidate for public office, the right to vote, and the right to be a member of a political party.[3] These rights cannot be infringed upon by the legislature and any attempt by the legislative branch to infringe upon such a right will be curtailed by the judiciary.[4] However, a citizen of Florida does not have the “right” to have a municipal government established, continued, or abolished. Such “rights” are within the exclusive province of the legislature.
■ The instant question has never been specifically passed upon by the appellate courts of this jurisdiction. We find in Williams v. Keyes[5] a case close in point and it is interesting to note that each party cites same in support of his position. That cause involved the calling of a recall election in the municipality of Miami. What is termed “the charter statute” by the opinion provided as follows:
“Should the Commission fail or refuse to order an election as herein provided within the time required such election may be ordered by any State Court of general jurisdiction.”
Thus, the legislature clearly provided for an eventuality which could readily be foreseen — that is, the failure of City Commissioners to call an election seeking to oust them from office. In holding that the above cited provision did not authorize a transgression by the judiciary of executive functions, and thus was not unconstitutional, the Supreme Court stated on page 260 of 186 So. as follows:
“Ordering an election to be held is ordinarily an administrative function or duty and is not one of the powers of government’ that are by the constitution divided into three departments, viz., Legislative, Executive and Judicial. Administrative authority or duty may by statute be appropriately made subject to the powers of either of the three departments when no provision of the constitution is thereby violated, for practically all the powers of government are executed or enforced through administrative or ministerial officers, agents or employees. See State v. A. C. L. Ry. Co., 56 Fla. 617, 47 So. 969, 32 L.R.A., N.S., 639. *53 The Governor orders special elections to fill vacancies in office in stated cases. Sec. 256(221), C. G. L. [Emphasis supplied].
“The quoted provisions of the Miami City Charter Act do no more than to expressly authorize State courts of general jurisdiction to order a recall election to be held if the City Commissioners fail or refuse to order a recall election when it is their duty to do so.”
In reaching its holding the Williams case stated that courts of equity do not have general jurisdiction to order elections in the absence of valid statutory authority although “courts of equity do have power in proper cases to require that to be done which in law should be done; and any appropriate statutory or other means not violative of organic law may be utilized in requiring statutory duties to be performed by persons designated by the court itself or by statute, as may be most appropriate to the complete exercise of the equity power when the constitution or a controlling statute is not violated * [6] We conclude that the chancellor erred by accepting jurisdiction of the instant cause.
Admittedly, the Charter of the Town of Oak Hill did not expressly authorize the courts to call an election for the purpose of reactivating the municipal government should the same become dormant. This being an event for which the legislature made no provision, a casus omis-sus, such omission can in no case be supplied by a court for to do so would be to make laws.[7]
Furthermore, this case does not fall within that class of cases which recognize the power of courts of equity to require that to be done which in law ought to be done provided there is any appropriate statutory law or other means not violative of organic law which may be utilized in requiring statutory duties to be performed by persons designated by the court. There has been no showing of any sudden emergency, no recent loss of any rights, and no reason shown why equity should use its extraordinary powers to relieve a situation which has been in existence for over 32 years during which time legislatures convened and adjourned biennially.
Courts should insofar as possible stay out of the political jungle. Equity jurisdiction like the virtuous maiden, should walk cautiously in the shadows — that is, the shadowy area of taking or rejecting jurisdiction. We should not emulate the Supreme Court of the Federal System, and purport to “fashion the law” or explore “the range of judicial inventiveness.”[8]
We would be remiss if we did not take judicial notice of the great number of “paper” municipalities which were created in the boom years of the twenties and which have been dormant since the “bust” years of the thirties. Obviously the Town of Oak Hill falls within this category and, like Rip Van Winkle, peacefully rested through the years elapsing between the “bust” of the thirties and the current “space age boom” of the early sixties. It is our judgment that if new life is to be breathed into this dormant municipality, such should be done by its creator, the legislative branch of government. The primary responsibility of the judiciary is to interpret the law; making the law is the fundamental chore of the legislative branch. The castos omissus or hiatus found in this cause is a prize steer *54 that we can well let continue to roam subject to the lasso of the legislature.[9]
The summary final decree is reversed.
STURGIS, C. J., and WIGGINTON, J., concur.

. Article II, Constitution of the State of Florida, F.S.A.

. Article VIII, Section 8, Constitution of the State of Florida, F.S.A.

. Joughin, Sheriff v. Parks, Circuit Judge, 107 Fla. 833, 147 So. 273 (1933).

. See Thomas v. State, 58 So.2d 173, 34 A.L.R.2d 140 (Fla.1952) in which the Supreme Court construed a statute prescribing additional qualifications for Superintendent of Public Instruction as being unconstitutional; and Riley v. Hol-mer, 100 Fla. 938, 131 So. 330 (1930), which held that the legislature cannot by statute alter a constitutional prerequisite for one to qualify as an elector.

. Williams v. Keyes, 135 Fla. 769, 186 So. 250, 260 (Fla.1938).

. Ibid, 180 So. p. 261.

. Greenberg v. Greenberg, 101 So.2d 608 (Ma.App.3d, 1958).

. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972, 981.

. See Lewis v. Florida State Board of Health, 143 So.2d 867 (Fla.App. 1st, 1962).