QUESTION: What is the effect if one municipality annexes territory and, thereafter, the Legislature creates a new municipality encompassing some of the same territory as annexed by the first municipality?
SUMMARY: Although the binding resolution of this issue must be achieved within the context of appropriate judicial proceedings, it would appear from applicable judicial precedents that the boundaries of the City of Sanford, to the extent they overlap the boundaries of the City of Lake Mary, as defined and established in Ch. 73-522, Laws of Florida, are altered; and that the antecedent ordinance of the former municipality which annexed the disputed territory has been superseded in effect by Ch. 73-522. Any conflict existing between such annexation ordinance and Ch. 73-522, an enactment of the Legislature, should be resolved in favor of the Legislature's enactment. According to your letter, in 1973 the City of Sanford adopted ordinance number 1138 which annexed certain territory into that city. Chapter 73-522, Laws of Florida, creating the City of Lake Mary, was filed with the Department of State 25 days following the adoption of said ordinance and was subsequently approved by local referendum. The boundaries of the City of Lake Mary were apparently defined in Ch. 73-522 to include a portion of the territory annexed into the City of Sanford by ordinance number 1138. You inquire as to whether you should record the disputed territory as being within the City of Lake Mary or the City of Sanford. A determination of your inquiry involves a consideration of several legal principles. Firstly, it is a long-settled rule that there cannot be two legal and effective municipal corporations at the same time over the same territory. See State v. Town of Winter Park, 5 So. 818, 821 (Fla. 1889), in which it was stated: The object of such a corporation is the good government of the locality, and obviously that cannot be attained where two separate corporations are exercising the same jurisdiction, powers and privileges. On the contrary, it would lead to public confusion and disorder. The Florida Supreme Court then went on to hold that there could be a de facto corporation in actual government until ousted in quo warranto proceedings by the legally organized corporation entitled to govern. See also 62 C.J.S. s. 85, p. 202; 56 Am. Jur.2d s. 40, p. 102; 2 McQuillin Municipal Corporations s. 7.08, pp. 298-305; and Town of Enterprise v. State, 10 So. 740, 742 (Fla. 1892). Secondly, Art. VIII, s. 2(a), State Const., provides: Municipalities may be established or abolished and their charters amended pursuant to general or special law. When any municipality is abolished, provision shall be made for the protection of its creditors. Cases construing Art. VIII, s. 8, State Const. 1885, from which the foregoing section was derived in substantially similar form, have recognized that the Legislature's power to establish and abolish municipalities is plenary and is subject only to restrictions specified in the Constitution. See City of Lake Worth v. State of Florida, 111 So.2d 433 (Fla. 1959); Smith v. Treadwell,161 So.2d 49 (1 D.C.A. Fla., 1964), reversed on other grounds, 175 So.2d 777
(Fla. 1965). In City of Fort Lauderdale v. Town of Hacienda Village, Inc., 172 So.2d 451, 452 (Fla. 1965), the Florida Supreme Court stated: Short of invading private property rights, the Legislature has plenary power to fix municipal jurisdiction over any part of the State. It is for the Legislature to determine when and to what extent a particular area of the State shall be incorporated. See also State ex rel. Lee v. City of Cape Coral,272 So.2d 481 (Fla. 1973), which cited City of Fort Lauderdale v. Town of Hacienda Village, Inc., supra, in construing Art. VIII, s. 2(a), State Const.; and City of Fort Myers v. State, 176 So. 483
(Fla. 1937); cf. Landis v. City of Roseburg, 411 P.2d 282, 286
(Ore. 1966), as to a situation in which there are conflicting claims of jurisdiction between two municipalities because of the actions of the municipalities themselves. Further, previous court decisions have held that the power to establish and abolish municipalities which is conferred on the Legislature by Art. VIII, State Const., necessarily implies the power to establish and change a municipality's territorial jurisdiction. See State v. City of Fort Lauderdale, 136 So. 889 (Fla. 1931), and authorities cited therein. Thus, subject to constitutional restrictions having to do with equal protection, due process, and impairment of contracts, the Legislature may, in its discretion, establish and abolish municipalities and alter their boundaries. Thirdly, at least insofar as your specific inquiry is concerned, it appears to be a viable rule that municipal ordinances are inferior in status and subordinate to the laws of the state and that, if any doubt exists as to the extent of a power attempted to be exercised which may affect the operation of an enactment of the Legislature, the doubt is to be resolved against the ordinance and in favor of the Legislature's enactment. See City of Wilton Manors v. Starling,121 So.2d 172 (2 D.C.A. Fla., 1960); Peoples Gas System, Inc. v. Lynch, 254 So.2d 371 (3 D.C.A. Fla., 1971), cert. denied,267 So.2d 81 (Fla. 1972). Applying the foregoing discussion to the instant situation, I am of the view that under the aforecited judicial precedents, although the binding resolution of this problem must be achieved within the context of appropriate judicial proceedings (such as quo warranto proceedings by one municipality against the other), the boundaries of the City of Sanford, to the extent they overlap the boundaries of the City of Lake Mary, as defined and established in Ch. 73-522, Laws of Florida, are altered and the annexation ordinance in question is superseded in effect. I reach this conclusion primarily because, under the general rule stated hereinabove, the conflict which apparently exists between the annexation ordinance and Ch. 73-522, an enactment of the Legislature, should be resolved in favor of the latter.