765 So.2d 289 (2000)
CITY OF JACKSONVILLE and John Stafford, Supervisor of Elections for Duval County, Florida, Appellants,
v.
Henry W. COOK, Individually, Appellee.
No. 1D99-4593.
District Court of Appeal of Florida, First District.
August 22, 2000.
*290 Richard A. Mullaney, General Counsel; Loree L. French, Assistant General Counsel, Jacksonville, for appellants.
Raymond Ehrlich and Scott D. Makar of Holland & Knight, Jacksonville; Richard G. Rumrell and Lindsey Brock of Rumrell, Wagner & Costabel, Jacksonville, for appellee.
PER CURIAM.
In this case, appellants contend in their first point on appeal that the trial court erroneously adjudged Jacksonville's charter provision for a two-term limit on the office of clerk of the court to be unconstitutional; in their second point, they argue that the trial court abused its discretion in admitting expert witness testimony on a legal issue. We affirm on the second point and reverse on the first.
In 1992, the electors of Duval County adopted a two-term limit for the office of clerk of the court by enacting section 12.11, Charter of the City of Jacksonville:
Two-term limit.No person elected and qualified for two consecutive full terms as clerk of the court shall be eligible for election as clerk of the court for the next succeeding term. The two-term limitation shall apply to any full term which began in 1992 or thereafter.
Appellee, who was initially appointed as clerk of the court in 1988, was subsequently elected later in 1988 and reelected in 1992 and 1996. In 1998, appellee presented his Statement of Candidate as required by section 106.023, Florida Statutes, to the supervisor of elections for Duval County. The supervisor of elections refused to accept the appellee's Statement of Candidate given the charter's prohibition against an individual serving as clerk for more than two consecutive full terms.
Appellee filed a complaint for declaratory relief, requesting that the trial court find section 12.11 of the charter unconstitutional. The factual record before the trial court was established in part by stipulation. The testimony of the appellee was presented to the court as well as the videotaped testimony of the appellants' expert witness, Alan Sundberg.
In its final judgment, the trial court held that the charter's term limit amendment was unconstitutional because it prescribed qualifications for a constitutional officer beyond those set forth in the Florida Constitution. As such, the trial court declared *291 the term limit amendment invalid and instructed the supervisor of elections to accept the appellee's application. This appeal by the city of Jacksonville and by the supervisor of elections ensued.
We find no error as to the second point raised on appeal. Appellants maintain that the trial court abused its discretion by admitting expert witness testimony on a legal issue. The record shows that appellee's expert witness, former Florida Supreme Court Justice Alan Sundberg, testified by deposition about the judicial nature of the office of clerk of court as well as the operation and interaction of various enactments as they apply in this case. Nowhere in his deposition does the witness opine on the ultimate issue of the case which was the constitutionality of the term limit amendment to the Jacksonville charter. Expert testimony is permissible where the witness is qualified to testify on the matters at issue and the testimony does not outright instruct the trier of fact how to decide the case. See Town of Palm Beach v. Palm Beach County, 460 So.2d 879, 882 (Fla.1984); In re Estate of Lenahan, 511 So.2d 365, 371 (Fla. 1st DCA 1987). See also § 90.703, Fla. Stat. (1997).
On the first and major issue raised in this appeal, we are concerned with whether the trial court erred in finding that Jacksonville's charter provision for a two-term limit is unconstitutional as an additional qualification for clerk of the court. When the trial court enters an order on the constitutionality of a statute, the appropriate standard of review is de novo. Despite the presumption of correctness given to the trial court's decision, there is an overriding presumption that the statute is constitutional. See State, Dep't of Ins. v. Keys Title and Abstract Co., Inc., 741 So.2d 599, 601 (Fla. 1st DCA 1999). We conclude that the charter provision at issue in this case is constitutional.
In State ex rel. Askew v. Thomas, 293 So.2d 40 (Fla.1974), the supreme court held that a state or local qualification for a constitutional office is only unconstitutional if it conflicts with a qualification for that office set forth in the constitution. There the supreme court addressed the constitutionality of a statutory residency requirement placed upon the office of an article IX school board member. Section 230.19, Florida Statutes, provided that if a school board member was no longer a resident of the area in which elected, the member's office would be considered vacant. See id. at 42. Ms. Thomas was a school board member who moved from the area in which elected, resulting in her office being declared vacant. See id. at 41. Ms. Thomas challenged the constitutionality of the residency requirement, claiming that it impinged upon the qualifications for the office of school board member which she argued were expressly prescribed by the constitution, thus precluding amendment by statute. See id.
In Askew, the supreme court held the statutory residency requirement at issue there to be constitutional. See id. at 42. In so doing, the supreme court explained that it must uphold a statutory qualification for office where there is no contrary constitutional provision on the subject. See id. There, the supreme court concluded that because the constitution did not address qualifications for article IX school board members, a statutory provision imposing a residency requirement on such officers was not unconstitutional. See id. There are no more specific qualifications found in article VIII, section 1(d) or in article V, section 16 for the clerk of the court than are found in article IX, section 4 for school board members. Under Askew, we conclude that the term limit amendment to the charter in this case is constitutional.
The Askew decision was reaffirmed by the supreme court in State v. Grassi, 532 So.2d 1055 (Fla.1988), where the supreme court again addressed the issue of whether the legislature could establish qualifications for an office created by the constitution. In Grassi, a candidate for county *292 commissioner challenged the constitutionality of a statute requiring that the candidate for office of county commissioner must be a resident of the district for which he is qualifying at the time he presents his qualifying papers. See id. at 1055-1056. The constitution merely required residency in the commissioner's district at the time of election. See id. at 1056. The trial court in Grassi agreed with the candidate, holding that the statutory requirement that he be a resident prior to election was a qualification in addition to that already required by article VIII; therefore, it was unconstitutional. See id. The supreme court agreed, and quoting Askew, stated,
We have consistently held that statutes imposing additional qualifications are unconstitutional where the basic document of the constitution itself has already undertaken to set forth those requirements.
Therefore, if article VIII, section 1(e) of the Florida Constitution, provides qualifications for the office of county commissioner, the legislature is prohibited from imposing any additional qualifications.
Id. (quoting State ex rel. Askew v. Thomas, 293 So.2d 40, 42 (Fla.1974)).
The trial court in the instant case relied on two cases which preceded Askew and Grassi to support its position that the constitution does not authorize Jacksonville to establish qualifications for the office of the clerk of the court: State ex rel. Attorney General v. George, 23 Fla. 585, 3 So. 81 (1887); and Thomas v. State ex rel. Cobb, 58 So.2d 173 (Fla.1952). In Cobb, the supreme court relied upon the opinion in George and held that the constitution prescribed qualifications for governor, senators, members of the House of Representatives, and circuit and supreme court judges, but no others. See Cobb, 58 So.2d at 176-177. The Cobb court further held that the constitution's silence as to qualifications for other officers indicated the framers' intent that any person should be allowed to run for office regardless of qualifications. See id. at 180-181. Nevertheless, the Cobb court's actual conclusion was similar to that held by the supreme court in Askew and Grassi, in that the Cobb court held that the Florida statute at issue was unconstitutional because it prescribed qualifications for the office of superintendent of public instruction in addition to those prescribed by the constitution. See id. at 183. Such a conclusion is not inconsistent with the supreme court's later decisions in Askew and Grassi. Justice Terrell's concurring opinion in Cobb reached the same conclusion the court reached in Askew 22 years later. Justice Terrell wrote,
I do not agree with the general theory of the majority opinion that the legislature can require nothing more in the way of qualification for county superintendent of public instruction than that he be a qualified elector of a prescribed age and such others as are mentioned for county and state offices generally. I think it competent for the legislature to prescribe liberal educational, professional and other qualifications for those who contemplate being appointed or who expect to run for the office of County Superintendent of Public Instruction. There is no prohibition in the constitution against this, and being none, the way is open for the legislature to prescribe such qualifications.

Id. at 184 (Terrell, J., concurring) (emphasis added).
Legislative provisions must be construed to operate in harmony with each other, and it is a court's responsibility to harmonize statutory provisions and find them constitutional. See, e.g., Villery v. Florida Parole and Probation Comm'n, 396 So.2d 1107, 1111 (Fla.1980); District School Bd. of Lake County v. Talmadge, 381 So.2d 698, 703 n. 25 (Fla.1980). Although the appellee argued at trial that the 1972 amendment to article V of the Florida Constitution which created a state-wide court system and required that there be a clerk of the circuit court, indicated an *293 intent to preclude state and local governments from establishing qualifications for this office (an argument which was not addressed by the trial court), we cannot ignore article VIII, section 1(d) which expressly recognizes the clerk of the circuit court as a county officer.
The appellee's argument would seek to place the clerk of the court under the judiciary as a quasi judicial officer. If that position is taken, however, a portion of article VIII would be rendered useless. Not only are we required to construe provisions in harmony with one another, we are also precluded from construing constitutional provisions in such a way as to render other provisions meaningless. See, e.g., Chiles v. Phelps, 714 So.2d 453, 459 (Fla.1998). If there is a construction which will uphold the constitutionality of a statutory provision, a court must adopt that construction. See Miami Dolphins Ltd. v. Metropolitan Dade County, 394 So.2d 981, 988 (Fla.1981). If Jacksonville's charter provision can coexist with the Florida Constitution, then it is not unconstitutional. See State v. Sarasota County, 549 So.2d 659, 660 (Fla.1989).
The appellee's theory also creates discord with article III, section 11(a)(1) which provides in pertinent part as follows:
(a) There shall be no special law or general law of local application pertaining to:
(1) Election, jurisdiction or duties of officers, except officers of municipalities, chartered counties, special districts or local governmental agencies.
(emphasis added). The constitution clearly contemplates that Jacksonville's charter provisions relating to elections will have local, not statewide application. Were this court to accept the appellee's position that the clerk is an article V officer protected from state and local legislation, and the county officers listed in article VIII, section 1(d) are really statewide officers, then article III, section 11(a)(1), allowing for local changes to the election process would have no meaning.
Jacksonville's home rule powers authorize it to establish a governmental framework within its governmental boundaries which may affect all county officers enumerated in the constitution, which would include establishing term limit qualifications for the clerk of the circuit and county court. Pursuant to constitutional authority, Jacksonville's charter provides as follows:
The consolidated government shall have perpetual existence and shall have only such officers, departments, and other agencies as are provided in this charter or as may be established by the council.
§ 1.01(a), Charter of the City of Jacksonville. Jacksonville's charter provides for a sheriff, a supervisor of elections, a tax collector, a property appraiser, and a clerk of the circuit and county court. Specifically, as to the clerk of the circuit and county court, Jacksonville's charter provides as follows:
The office of the clerk of the circuit and county court shall continue and all general and special laws applicable thereto and not in conflict with this act shall continue in full force and effect except that the clerk of the circuit and county court shall be elected as herein provided.
The constitution is silent in both article V, section 16 and article VIII, section 1(d) as to specific qualifications for clerk of the court. The city of Jacksonville is not precluded from adopting and enforcing a two-term limit for the clerk of the court. The two-term limit of section 12 of Jacksonville's charter does not establish an unconstitutional qualification for the office of the clerk. We reverse.
BOOTH, J., and SHIVERS, DOUGLASS B., Senior Judge, concur; BENTON, J., concurs in result.